GEORGE R. HAILE, *Plaintiff in Error,* v. MASON HOTEL AND INVESTMENT COMPANY, A CORPORATION, *Defendant in Error.*

Opinion filed April 6, 1916.

1. The provision of the statute that "no writ of error shall be granted to the original plaintiff in any suit unless said plaintiff shall first pay all costs which may have occurred in and about the said suit up to the time when said writ of error shall be prayed," is for the benefit of the defendant in the trial court and it may be waived.

2. Taking a non-suit immediately after a motion for a directed verdict for the defendant is granted, may be regarded as a compliance with the statute requiring the non-suit to be taken "before the jury retire from the box."

3. The considerations and legal principles that guide the judicial discretion in directing a verdict and in granting a new trial on the evidence are not the same.

4. In directing a verdict, the court is governed practically by the same rules that are applicable in demurrers to evidence.

5. A party in moving for a directed verdict, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.

6. Where on the evidence adduced there is room for a difference of opinion between reasonable men as to the existence of facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail, and not primarily the views of the judge.

7. The duty devolving upon the court in reference to directing a verdict on the evidence may become, in many cases, one of delicacy, and it should be cautiously exercised.

8. Where the evidence tends to show that the plaintiff, who was injured by falling into an open elevator shaft in a hotel, was not a mere licensee, and the tendency of the evidence is to show actionable negligence on the part of the defendant hotel company, a verdict for the defendant should not be directed.

Writ of Error to Circuit Court, Duval County; D. A. Simmons, Judge.

Judgment reversed.

*A. H. King* and *Roswell King,* for Plaintiff in Error;

*Marks, Marks & Holt,* for Defendant in Error.

WHITFIELD, J.—George R. Haile brought an action against the hotel company in which the declaration alleges in effect that the defendant company was the owner and proprietor of a certain hotel called Mason Hotel, in the City of Jacksonville, Florida; that plaintiff at about 11:30 A. M. went to the said Mason Hotel on business with its manager when he was then and there directed and conducted to the office of the said manager by a clerk and another employee of the defendant; that after concluding his business with the said manager, plaintiff proceeded to leave said office and Hotel by a passage way or hall way then and there provided for said purpose; that while he was passing or attempting to pass from the said office of the said manager to the lobby of said Hotel, as he was directed, authorized and invited to do, plaintiff fell into an open elevator shaft in said hall or passage way which was and had been left open, unguarded, unlighted, unprotected by and through the negligence and carelessness of the defendant; that defendant was guilty of negligence and carelessness in the premises, in this, to-wit:   that it failed to keep said hall way or passage way sufficiently or properly lighted for the protection of plaintiff and others similarly situated in the premises; that by reason of said carelessness and negligence of the defendant the plaintiff fell into the elevator shaft as aforesaid, and was injured etc., wherefore plaintiff claims specified damages.

Issue was joined on a plea of not guilty and several special pleas. At the trial after the evidence for the plaintiff had been introduced, the defendant moved for an instructed verdict the grounds being:

"1st.   The evidence adduced is insufficient to entitle the jury to lawfully find for the plaintiff.

*2nd.* It appears from the undisputed testimony that the defendant violated no duty owed to the plaintiff.

*3rd.* It affirmatively appears that plaintiff was a mere licensee upon the property of the defendant at the time and place when and where he was injured.

*5th.* It affirmatively appears that plaintiff was a mere licensee upon defendant's premises because he went there of his own volition and for his own business ends, and without invitation from this defendant, and consequently has no right to complain of the condition of said premises.

*5th.* Because it does not appear that the alleged clerk and other employe who directed plaintiff to that portion of the Hotel where he was injured, if such direction was given, had any authority (actual or apparent), to give the same for and on behalf of this defendant, and further, because even if such direction was given by parties authorized to bind this defendant, same merely amounted to a permission or license to go upon the premises, and not to an invitation.

*6th.* Because it affirmatively appears that the plaintiff suffered the alleged injuries by reason of his own negligence and not otherwise.

*7th.* Because the testimony proves defendants pleas without contradiction." The motion was granted. The plaintiff excepted to the ruling and moved for a nonsuit with bill of exceptions, which was granted, the defendant excepting thereto. Thereupon the court rendered a judgment "that a judgment of non-suit be entered against the plaintiff, George R. Haile, and that defendant, Mason Hotel and Investment Company, a corporation, go hence without day and recover" its costs, and the plaintiff took writ of error. The defendant also

took a writ of error to the judgment granting a non-suit to the plaintiff.

After the cause was submitted on briefs upon the merits, the defendant below moved to dismiss the plaintiff's writ of error on the ground that the costs below had not been paid as required by the statute. "Writs of error * * * shall issue on demand as matter of right * * * But no writ of error shall be granted to the original plaintiff in any suit unless said plaintiff shall first pay all costs which may have accrued in and about the said suit up to the time when said writ of error shall be prayed." Gen. Stats. 1906, §1698. The latter provision is for the benefit of the defendant in the trial court and it may be waived. In this case it was stated at the bar that the costs assessed when the writ of error was issued were paid. Subsequently other costs due in the cause were taxed. The defendant having submitted the cause before making the motion to dismiss has waived his right by not acting promptly. He had notice of the issuance of the writ of error by its record under the statute. The motion to dismiss is denied.

As the plaintiff had a right by bill of exceptions and writ of error to a final judgment for the defendant duly taken, to a review of the order directing a verdict for the defendant, the taking of a non-suit with bill of exceptions under the statute was unnecessary.

Taking a non-suit immediately after a motion for a directed verdict for the defendant is granted, may be regarded as a compliance with the statute requiring the non-suit to be taken "before the jury retire from the bar."

Section 1496 of the General Statutes of 1906 as amended by section 1 Chapter 6220 Acts of 1911 is as follows: "Upon the trial of all cases at law in the sev-

eral courts of this State, the Judge presiding on such trial shall charge the jury only upon the law of the case; that is upon some point or points of law arising in the trial of said cause. If, however, after all the evidence shall have been submitted on behalf of the plaintiff in any civil case, it be apparent to the Judge of the Circuit Court, County Court or Court of Record that no evidence has been submitted upon which the jury could lawfully find a verdict for the plaintiff, the Judge may then direct the jury to find a verdict for the defendant; and if, after all the evidence of all the parties shall have been submitted, it be apparent to the Judge of the Circuit Court or County Court or Court of Record that no sufficient evidence has been submitted upon which the jury could legally find a verdict for one party, the Judge may direct the jury to find a verdict for the opposite party." §1496 Compiled Laws 1914.

The amendment to the statute above quoted provides that "after all the evidence shall have been submitted on behalf of the plaintiff in any civil case, if it be apparent to the judge * * * that no evidence has been submitted upon which the jury could lawfully find a verdict for the plaintiff, the Judge may then direct the jury to find a verdict for the defendant."

The considerations and legal principles that guide the judicial discretion in directing a verdict and in granting a new trial on the evidence are not the same.

In directing a verdict, the court is governed practically by the same rules that are applicable in demurrers to evidence.

A party in moving for a directed verdict, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that

a jury might fairly and reasonably infer from the evidence.

Where on the evidence adduced there is room for a difference of opinion between reasonable men as to the existence of facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences that might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail, and not primarily the views of the judge.

The duty devolving upon the court in reference to directing a verdict on the evidence may become, in many cases, one of delicacy, and it should be cautiously exercised.  Gunn v. City of Jacksonville, 67 Fla.. 40, 64 South. Rep. 435.

The plaintiff testified that on the day he was injured he went to the Mason Hotel between eleven and twelve o'clock, to see Mr. Mason, the manager of the hotel; that he went to the office in the lobby of the hotel and asked to see Mr. Mason; that he asked one of the clerks at the counter if he could see Mr. Mason.  "He told me that Mr. Mason was in his private office.  I asked where was his private office.  He says, 'It's back behind yonder.'  I says, 'I have never been back in there before and I don't know where the office is.'  I says, 'Will you please show me where it is?'  At that time he called one of the bell boys and says, 'Show Mr. Haile Mr. Mason's office,' which the bell boy did.  I recognized him as one of the bell boys in the hotel.  There was half a dozen of them waiting round there for service.  The clerk called him just the same as if he had called a bell boy to show me to a room upstairs.  The bell boy led the way and opened the door to the passageway that leads back behind there, and through a little room, and says, 'That is

Mr. Mason's office right there,' and I opened the door and saw Mr. Mason sitting there and I went in and sat down and had a little talk with him. I was not with him over eight or ten minutes. The first conversation I had with him was just a short conversation on the line of business with the new hotel * * * ."

"When I finished my conversation with Mr. Mason I got up and bid him good by. He stood up and shook hands with me, opened the door, and as I walked out he closed the door, the door to his private office. If I remember right, he had some kind of lights in his office. I don't know what they were, but it was light enough to do work in there. You could see to do work. I don't know whether they had a skylight over it, or not. That was my first trip back there. When I passed out of his office, Mr. Mason was standing up right by his desk, just inside the door, I think a little to the right. I don't remember, but I think his desk sat just a little to the right of the door. He ushered me out. I came right through the place they call it a linen room, right through from his door, the only way you could get out, that's the way I went in, right back to another door that opened into a little narrow hall about, possibly five or six feet wide, six or seven feet may be. This was the same hall that I crossed in going to Mr. Mason's place. I came out the same door that I went in, out of this linen room, or the big room of some kind. That hall leads from—there is a door enters into that hall from Bay Street. I didn't go in from Bay Street. I came in directly from the lobby across. And there's a kind of little passageway· that leads from this hall back into the main lobby possibly six or seven feet from the hall which makes a kind of ell like, and the door is back, going into the lobby, is back six or seven feet as near as I can guess.· That door was

a solid door and it was closed. The hall was the hall that I had come down from the lobby in going into Mr. Mason's office, the lobby that the bell boy had shown me out.

"As soon as I got out of the door, the hall was very dark, and I never thought for a moment but I knew the way back into the lobby just as I came out; and of course I walked right on through, attempting to go where I could find the door I came out of. I didn't know of any other opening there only the opening on Bay Street at the end of the hall. I attempted to leave through the same passage I came in. The next thing I knew I was on my way down into the basement. I was too completely paralyzed to realize or know anything for some little time. I knew I had fallen into something, but I didn't know what, because I didn't know there was an elevator shaft open anywhere in that hall. I knew the position of all the elevators that opened into the main lobby because I had been up and down them a number of times. They all were in a row right along going up and down. And this elevator, it seems, was the first one, I believe, was the first one to the right as you come out of the main lobby, and to the left—to the right as you were coming back. It was the first elevator shaft which is right almost directly in a straight pathway of the little hall that leads back to the lobby. If I had walked two feet more to the left, I never would have, I don't believe, I would have fallen into an elevator, because it is not more than two feet from the elevator shaft to the little passage-way that leads back into the hall. This hall way must be about fifty or sixty feet long from the door that I went out of to Bay Street. I don't know, but just as an estimate, about fifty or sixty feet, something like that. It was cloudy and drizzling rain. I

don't believe the door I passed out of had a closing door to it, I don't know whether it did or not. The only thing I remember was after I stepped out of this room into the hall that the hall was perfectly dark."

There was other evidence tending to show actionable negligence by the defendant and resulting injury to the plaintiff as alleged.

It is contended for the defendant in error that the plaintiff below was injured by going into a private part of the hotel on business not connected with the hotel and that the action of the hotel clerk and bell boy in directing him to the room where the manager of the hotel had his office was unauthorized, making the plaintiff a bare licensee to whom the defendant owed no duty except to refrain from active negligence that would injure the plaintiff while on the premises.

The evidence tends to show that the plaintiff was not a mere licensee and that the circumstances imposed upon the defendant a duty to exercise ordinary care for the safety of the plaintiff by providing a safe exit for him from a room in the hotel into which he had been shown and directed by those whose duty it was to serve those lawfully entering the hotel. The evidence tends to show that the plaintiff attempted to leave the room by the same passageway through which he had been shown in entering the room to speak to the hotel manager; and that such passageway was not safe because insufficiently lighted and because of an unprotected opening into which the plaintiff fell.

It cannot be justly said that *no evidence* was submitted upon which the jury could lawfully find a verdict for the plaintiff, therefore, the statute quoted above does not

authorize a directed verdict for the defendant. King v. Cooney-Eckstein Co., 66 Fla. 246, 63 South. Rep. 659.

The judgment is reversed and a new trial granted.

SHACKLEFORD and COCKRELL, JJ., concur.

TAYLOR, C. J., and ELLIS, J., disqualified.