P. TOMASELLO, JR., as Receiver of the Bank of Okeechobee, an insolvent Florida Banking Corporation, *Plaintiff in Error*, v. J. F. WALTON, *Defendant in Error.*

Division B.

Opinion filed August 29, 1930.

*G. P. Garrett* and *Angus Sumner,* for Plaintiff in Error;

*Botts & Field,* for Defendant in Error.

BUFORD, J.—In this case Walton sued the Bank of Okee-chobee on common counts, claiming damages in the sum of $50,000.00 and as bill of particulars to his declaration attached the following:

"To money paid to Bank of Okeechobee on sub-scription to stock in proposed Okeechobee Bank & Trust Co. ............................. $1500.00

To interest on 1500.00 from date of payment"

To the declaration the defendant filed two pleas, the first of which was "Never was indebted as alleged", and the second was as follows:

"Said defendant is an insolvent Florida Banking Cor-poration, and prior to the appointment of a Receiver

for such Bank as hereinafter stated was organized and existing as a banking corporation under the laws of the State of Florida, and, under said laws, conducted a banking business at Okeechobee, Florida. Prior to the institution of this suit viz. on to-wit the 30th day of June A. D. 1926, said defendant ceased to exist, by virtue of the fact that on to-wit said date the Comptroller of the State of Florida declared said Bank insolvent and appointed one P. Tomasello, Jr. as receiver of said Bank, and said appointment was duly confirmed by the Circuit Court of the Twenty-first Judicial Circuit in Okeechobee County, Florida. Pursuant to said appointment and confirmation and prior to the institution of this suit said Receiver qualified as such Receiver and took charge of all the assets and affairs of said Bank, and said Bank has ever since the said appointment remained insolvent, and is now insolvent, and said Receiver has ever since said qualification as Receiver, remained and still is the Receiver of said Bank in charge of all the assets and affairs of said Bank. And defendant says that by virtue of the appointment of said receiver all of the obligations and liabilities of said Bank have become and are the obligations and liabilities of the Receiver aforesaid. And defendant says that by virtue of the appointment of said Receiver a suspension was created of the rights, privileges and franchises theretofore exercised by said Bank and said Bank ceased to exist, and was not at the time of the institution of this suit, and is not now a banking corporation of the State of Florida. All of which defendant is ready to verify. Wherefore, said defendant says that the plaintiff ought not to have or maintain his action against said defendant in this case brought, but should have and maintain its action

solely against the Receiver of said Bank. And defendant prays the judgment of this Court whether this action ought further to be maintained against said defendant.''

The plaintiff filed demurrer to the 2nd plea. The demurrer was overruled. Thereupon, P. Tomasello, Jr., as Receiver of the Bank of Okeechobee, was substituted as the defendant. Thereupon, the Receiver filed a plea setting up the fact that he had been appointed Receiver of the Bank; that the plaintiff was indebted to the Receiver in the sum of Ten Thousand ($10,000.00) Dollars as 100 per cent stock assessment on One Hundred (100) shares of stock owned by the plaintiff of the par value of $100.00 per share, and, amongst other things, in his plea he alleges:

''Subsequent to the closing of said bank, viz, on the 1st day of June A. D. 1926, and prior to the institution of this suit, the Comptroller of the State of Florida levied a stock assessment against the stock of said banking corporation for the full amount of the stock of said banking corporation for the full amount of the stock held by each and every of the stockholders of said bank, in the par value thereof, in addition to the amount invested in said shares, and notified the plaintiff herein of the levy of such stock assessment, and required the said plaintiff to pay said stock assessment in cash to the said defendant Receiver forthwith. And the said plaintiff, prior to the institution of this suit, failed and refused to make said payment of said stock assessment so levied against him for the par value of said stock, and still fails and refuses to pay the same or any part thereof. Wherefore, the defendant Receiver as aforesaid, says that the said plaintiff is indebted to the said defendant

Receiver as aforesaid in the sum of $10,000.00 on said stock assessment, which said amount the said defendant Receiver is willing to set off against the plaintiff's claim. And this the said Defendant Receiver is ready to verify."

Plaintiff filed replication denying ownership of the shares of stock referred to in the plea and denied the existence of any indebtedness from the plaintiff to the defendant. Thereafter, plaintiff filed motion to dismiss the suit, upon which order was made on March 22, 1929, as follows:

"This cause coming on this day to be heard upon motion of plaintiff for an order dismissing said cause, and the plaintiff and defendant being represented by counsel, after argument of counsel the court being fully advised in the premises, it is

"ORDERED AND ADJUDGED that the said cause be, and the same is hereby dismissed at the cost of the plaintiff, and that the set-off or counter claim heretofore filed by the defendant in said cause be, and the same is hereby dismissed."

On August 29th, 1929, defendant filed motion to vacate the order of dismissal and in support of such motion filed an affidavit in which the following allegation appears:

"The above named J. F. Walton is a non-resident of the State of Florida, and a citizen of a state other than the State of Florida and there is no person in the State of Florida the service of summons upon whom would bind him. The claim set forth in my plea of set-off is valid claim on stock assessment, which said plaintiff resists. I have made diligent effort to see if I could get

service on this plaintiff on the matter of this set-off in an independent suit to determine the same and have wholly failed. The said plaintiff evades service. The purpose of the plaintiff's motion to dismiss is to deprive the courts of this state of jurisdiction of the stock assessment claim, embodied in my plea of set-off. Collection of the stock assessment from this plaintiff is important to the trust of which I am Receiver, in that even if the same is fully collected and distributed among the creditors of this bank, said creditors will only receive a small portion of their claims. The costs of court has not been paid by said plaintiff.''

The record shows that the costs were subsequently paid but, before they were paid, an order was made by the court denying the motion to vacate the order of dismissal.

Writ of error was taken and assignments of error are as follows:

"*Assignment of Error No. 1.* Said court erred in entering up said final judgment of dismissal.

"*Assignment of Error No. 2.* Said court erred in dismissing the said cause.

"*Assignment of Error No. 3.* Said court erred in including in said final judgment of dismissal a final judgment of dismissal of the set-off of counter-claim filed by the defendant in said cause.

"*Assignment of Error No. 4.* Said court erred in dismissing said cause prior to payment of the costs of said cause by the plaintiff.''

We have deemed it expedient to set forth in detail the various steps taken in this case, that what appears to be a deficiency in our statutes may be brought to the attention

of the Bench and Bar and may become a matter for legislative consideration.

In 9 R. C. L., page 202, paragraph 18, the author says:

"The remedy of set-off or counterclaim was unknown at common law, and, therefore, the question whether the plaintiff has a right to dismiss his action and take a non-suit after the defendant has interposed a counterclaim could not arise until that remedy was given by statute. Where the remedy is given, but the statute does not define the right of the plaintiff to dismiss his action after counterclaim has been pleaded, there is a conflict of authority as to the plaintiff's right to dismiss the action. While some jurisdictions hold that though the defendant has pleaded a set-off or counterclaim, the plaintiff may dismiss his action on motion made in due time, the great weight of authority seems to support the rule that where a defendant has interposed a counterclaim and asked for affirmative relief, the plaintiff can not prejudice the defendant in any way by taking a non-suit, or by dismissing his action, nor can he in any way prevent the defendant from proceeding to judgment upon his counterclaim. But the plaintiff may discontinue only as to his own claim or demand. A distinction has been made between a counterclaim arising out of the transaction set forth in the complaint and one arising independently of the cause of action alleged in the complaint, it being held that where the first kind of counterclaim is set up, the plaintiff can not voluntarily submit to a non-suit, as it is proper that the rights of the parties arising out of the same transaction should be settled at the same time, but that as to the second kind, the plaintiff may submit to a voluntary non-suit as to his own cause of

action, but cannot, by so doing, put an end to the defendant's right to litigate his own counterclaim.''

In Huffstutler v. Louisville Packing Co., 154 Ala. 291, 45 So. R. 418, the court say:

''The general right of the plaintiff to discontinue his suit, or to submit to a non-suit, at any time before verdict, is undoubted; and in the absence of any statute taking away the right, it exists in the cases where set-off is relied upon to the same extent as in other cases. This is fully recognized in Cummings v. Pruden, 11 Mass. 206, and Branham v. Brown's Adm'x., 1 Bailey (S. C.) 262. In several states statutes have been passed taking away the right; but we have no such statute. The fact that the statute of set-offs permits judgment to be taken by the defendant for the balance found due him does not preclude a discontinuance.—Cummings v. Pruden, *supra*.''

Our statute, Section 2660, Rev. Gen. Stats., 4326 Comp. Gen. Laws 1927, is as follows:

''All debts or demands mutually existing between parties at the commencement of the action, whether the same be liquidated or not, shall be proper subjects of set-off, and may be pleaded accordingly.

''The defendant, at the time of the filing of the plea, shall file therewith a true copy of the subject matter of such set-off; and upon the trial of the cause, in case the jury shall find a balance for the defendant, such defendant may claim a judgment for the same, and take out execution accordingly.''

The law as enunciated in the Alabama case has been recognized as the rule in this State since 1853, when this.

Court in the case of Buffington v. Quackenboss, 5 Fla. 196, said:

"The statute of the State of Florida confers upon a defendant the right to plead a set-off, upon which he is entitled to judgment against the plaintiff if his demand proved exceeds that of the latter. After plea of set-off pleaded, and issue joined, the plaintiff has a right to discontinue his suit upon payment of costs; and this is imperative whenever an order for discontinuance is entered in the clerk's office. But it is in the power of the court to relax the rule upon special affidavit and motion.

If the costs are not paid, or if the order had been conditioned on the payment of costs, the only remedy of the defendant would be by motion in the court below, to set aside the discontinuance, on the refusal of the plaintiff to comply with the terms of the order or the rule of the court."

This rule was approved in 1854 in the case of Clarke v. Wall, 5 Fla. 476.

In the case of West Coast Fruit Company v. Hackney, decided by this Court August 1st, 1929, 123 So. R. 758, the Court say:

"The rule is well settled in this jurisdiction that the presence of a plea of set-off does not deprive the plaintiff of his right to take a non-suit before the jury retires. Buffington v. Quackenboss, 5 Fla. 196; Clarke v. Wall, 5 Fla. 476; National Broadway Bank v. Lesley, 31 Fla. 56, 12 So. R. 525; Haile v. Mason Hotel & Investment Co., 71 Fla. 469, 71 So. R. 540. The reasons for this rule are well stated in the case first above cited."

It is true that in this case it appears that the costs had not been paid when the cause was dismissed but as the costs have been subsequently paid, a, reversal on this ground would be a vain and useless thing, because the plaintiff could immediately file praecipe to dismiss which should be complied with.

Whether the law should be otherwise or not is a matter for legislative determination and action.

For the reasons stated, the judgment should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, P. J., and STRUM, J., concur.

BROWN, J., concurs in the opinion and judgment.

TERRELL, C. J., not participating.

ELLIS, J., dissents.

ELLIS, J., (dissenting): With the greatest deference to the opinion of my fellows in this case I venture to dissent from the view expressed in the majority opinion.

My objection to the conclusion reached rests upon the following principles. The declaration as to three of its counts consists of common counts for money lent, money paid by plaintiff for the defendant and money received by the defendant for the plaintiff's use. The third count consists of a claim for interest upon the sums of money claimed which constitute the basis of the three preceding counts. That count of the declaration is superfluous because if the plaintiff recovered upon those counts he would be entitled to the recovery of interest from the date it appeared that the obligation to pay existed. The fourth

count is an action of tort for the conversion of the plaintiff's goods. Here are two causes of action, one arising ex contractu and the other ex delicto, joined in the same action which may be permissible under Section 4225 Comp. Gen. Laws 1927. The action on the common counts is in the nature of an equitable remedy.

Under the old common law the plaintiff had a right to dismiss his action and take a non-suit at any time before verdict, but the remedy of set-off or counter claim was unknown in the common law therefore the question presented in this case, which is: may the plaintiff at any time before the verdict dismiss his action where the defendant under the authority of a statute had set up or pleaded against the plaintiff a set-off or counter claim where such dismissal would operate to the defendant's prejudice by taking from him the right to pursue his action against the plaintiff which under the statute the defendant was permitted to engraft upon the plaintiff's action, could never have arisen under the common law. It follows therefore that the old common law rule has no application whatsoever under the new conditions growing out of the right secured by statute except in so far as the plaintiff's control over his own cause of action is concerned. The rule in equity would not permit such action by the complainant.

Now the common law action of general assumpsit is in its nature equitable. It grows out of an obligation which the law by way of equitable considerations imposes upon the defendant under the conditions set up in the common counts.

It follows that the rule announced in Buffington v. Quackenboss, 5 Fla. 196, and followed in Clarke v. Wall, 5 Fla. 476 and West Coast Fruit Company v. Hackney, 98 Fla. 382, 123 So. R. 758, rests upon the reasoning which

the court advanced based exclusively upon the common law doctrine that the plaintiff may at any time before verdict take a non-suit and dismissal of his cause. The reasoning upon which the rule rests I submit is not cogent.

To quote from the language used by the court in Buffington v. Quackenboss, *supra*. ''The supposed hardship which might result from the defendant's set-off being barred by the statute of limitations, in the event of the plaintiff discontinuing his suit, cannot affect the *plaintiff's rights*. To plead the set-off is a right conferred by statute which the defendant may or may not avail himself of, at his election. And when pled, the defendant may withdraw his set-off at any time before the jury retire. It is very obvious, that to deny a plaintiff the right to discontinue his action, by reason of a set-off being pled, would, in effect, be to rescind the rule and destroy the right altogether, for in any case, it would be in the power of a defendant, by pleading a set-off, whether real or fictitious, to force the plaintiff to a trial.''

Now, there are several fallacies in this reasoning which I will undertake to point out. The *''plaintiff's* rights''* as to a discontinuance of his action were rights existing at common law under which the right now existing under statute to plead a set-off, that is to graft a new action upon the plaintiff's action, did not exist. The reasoning does not point out that the ''plaintiff's rights'' under the statute permitting the defendant to plead a set-off are the same as they existed at common law. Again if the plaintiff dismisses his action without prejudice to the defendant's right to maintain his counter action of set-off, it in no wise impairs the ''plaintiff's right'' at common law to discontinue his action.

Again, it by no means follows that if the defendant withdraws his plea or new action of set-off, it in any man-

ner affects the plaintiff's right to pursue his action to final judgment. If any effect results it is beneficial to the plaintiff who in such case is not put to the necessity of defending against the defendant's set-off.

The illustration as used in the opinion is not reciprocal, for it cannot be argued that because the defendant may withdraw his set-off which act will not affect plaintiff's action that the plaintiff therefore may withdraw his action and thus defeat the defendant's action.

On the contrary it is more logical to say that if the defendant may withdraw his set-off and not affect the plaintiff's action existing at common law the plaintiff may withdraw his action and not affect the defendant's action *secured* to him by statute. Again, the setting up of a set-off "real or fictitious" does *not* force the plaintiff to a trial on his own action because the plea of set-off admits the existence of the plaintiff's right to recover on the action brought by him and only requires him to defend the new or statutory action of set-off.

A plea of set-off is one of confession and avoidance. It does not controvert the plaintiff's cause of action against him but except as otherwise provided by statute admits it and sets up a cause of action in himself to extinguish it in whole or in part and to entitle him to an *affirmative* judgment for any excess. 23 Stand. Ency. Procedure 803.

The English statute of set-off did not permit an affirmative recovery against the plaintiff. Under the statutes in this country the defendant may in set-off liquidate the whole or part of plaintiff's claim and also have judgment for whatever excess he proves over plaintiff's demand. 23 Stand. Ency. Procedure 806.

This feature of set-off which characterizes the rule in this State makes it clear that a set-off is a cross action in which the defendant may have an *affirmative* judgment against

the plaintiff which at common law could not be obtained except in an independent action against him.

The Buffington-Quackenboss case, *supra,* was decided more than seventy-five years ago when the facilities for commercial transactions were incomparable to those of the present day. There were difficulties almost insurmountable to contractual relations in many cases when today it is a matter of a postage stamp, a telegraphic or telephonic message and the agreement is concluded in a few hours or days where in 1853 it might have required months or was considered altogether impracticable. Today men of different states which may be separated by thousands of miles of distance, even of different nations, enter into contractual relations almost with the facility with which, during the time when Mr. Justice SEMMES wrote, men living in the same village could assume mutual obligations.

The law is not an inflexible rule, a mere arbitrary static rule, it adjusts itself to conditions as progress in human affairs may require, not to the extent of changing a principle to meet a condition but at least of extending or modifying a court's interpretation of its meaning and application. Milwaukee v. Milwaukee Elec. R. & L. Co., 173 Wis. 400, text 486, 180 N. W. R. 339; Moss Point Lumber Co. v. Harrison County, 89 Miss. 448, 42 So. R. 290. The common law itself is an evidence of the law's flexibility.

That is all that exists in the Buffington-Quackenboss case, a court's construction of the effect of a statute in the light of a common law right which existed before the statute came into existence.

That this proposition is true is evidenced by overwhelming authority in support of the doctrine that a set-off is in the nature of a cross action which when set up pleaded or begun by the defendant whom the plaintiff has brought into court secures to the defendant the right to pursue such ac-

tion to final judgment against the plaintiff for the excess of defendant's claim over the plaintiff's demand, and this right which the statute secures to a defendant may not be defeated by the plaintiff in exercising a right which he had at common law where the right to the cross action was unknown. That the right to a non-suit exists as at common law but under statutes of set-off where the defendant pleads a set-off or counterclaim the court may restrain the full exercise of it to meet the requirements of reasonableness and justness in the exercise of the right, see McKesson v. Mendenhall, 64 N. C. 502; Hutchinson v. Paige, 67 Wis. 206, 29 N. W. R. 908; Clark v. Hundley, 65 Cal. 96, 3 Pac. R. 131; Mott v. Mott, 82 Cal. 413, 22 Pac. R. 1140; Jackson v. Roane, 96 Ga. 40, 23 So. E. R. 118; Boone v. Bush, 91 Tenn. 29; See also 6 Ency. Pl. & Pr. 849 and authorities cited; Wilson v. Exchange Bank, 122 Ga. 495, 50 So. E. R. 357, 69 L. R. A. 97; Watts v. Sweeney, 127 Ind. 116, 26 N. E. R. 680; Miles v. Boyle, 26 S. D. 211, 128 N. W. R. 123, Ann. Cas. 1913 A 1077; 9 R. C. L. 203.

The reasonableness and soundness of the modern rule may be exemplified by many illustrations. It is quite certain, however, that the question is not one which calls for action by the legislature. The rule announced by this court in the year 1853 and supported by reasoning not at all convincing did not become such a rule of conduct as to require legislative interference to correct. It was merely a court interpretation of a statute which did not and cannot become a rule of property but a rule which in the light of later times may be shown to be inequitable and unjust requiring a different interpretation.

Under the circumstances shown by the defendant's motion and affidavit I think the order granting a dismissal of the defendant's counter action or cross claim was an abuse of discretion and should be reversed.