HARRY VICTOR v. STATE.

193 So. 762
Division B
Opinion Filed August 1, 1939
On Rehearing February 16, 1940

*John R. Parkhill* and *Cyrus W. Fields,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, for Defendant in Error.

BROWN, J.—We cannot concur in the contention that the motion for directed verdict should have been granted. It has long been the law of this State that if reasonable men may differ as to the existence of facts tending reasonably to prove an ultimate fact, or as to inferences to be drawn from conceded facts, the case should be submitted to the jury. There was sufficient evidence adduced here to sub-

mit the case to the jury and in our opinion no error was committed by the trial judge in refusing to direct a verdict.

While it is true that most of the evidence adduced was circumstantial, this Court has repeatedly held that when such evidence is of a conclusive nature and tendency, and is consistent with guilt and inconsistent with innocence, leading on the whole to a reasonable and moral certainty that the accused and no one else committed the offense charged, such evidence will sustain a conviction. Hall v. State, 90 Fla. 719; 107 So. 246; Cannon v. State, 91 Fla. 214, 107 So. 360; Lee v. State, 96 Fla. 59, 117 So. 699; Whiting v. State, 97 Fla. 693, 122 So. 2; Parrish v. State, 98 Fla. 877, 124 So. 444; Simmons v. State, 99 Fla. 1216, 128 So. 486. And a party moving for a directed verdict admits facts in evidence adduced and every conclusion favorable to his adversary fairly and reasonably inferrable therefrom. E. E. Alley Co. v. Ball, 102 Fla. 1034, 136 So. 704; Gulf Refining Co. v. Ankeny, 102 Fla. 151, 135 So. 521; Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975; L. R. A. 1917E 715; Haile v. Mason Hotel & Investment Co., 71 Fla. 469, 71 So. 540; Gunn v. City of Jacksonville, 67 Fla. 40, 64 So. 435.

The evidence strongly tended to show that the tickets represented a live interest in a lottery not yet played known as "New York Bond," as shown by their date, when considered in connection with the testimony of the witnesses Pent and Ross as to how the lottery known as "New York Bond" is played and the lucky number is determined and the pay-off made. See pages 10 to 13, and 16 to 22, of the transcript. The testimony of these two witnesses on cross examination that they could not testify of their own knowledge that these particular tickets could have been collected on does not destroy the effect of their testimony as to how the lottery was played.

We think the trial court was correct in submitting the case to the jury, and the judgment is accordingly affirmed.

WHITFIELD, P. J., and CHAPMAN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## ON REHEARING

PER CURIAM.—Harry Victor was convicted in the Criminal Court of Record in Hillsborough County of having in his possession certain lottery tickets, representing an interest in a lottery not yet played. It appears that two deputy sheriffs entered a building at 412 Tampa Street, walked through to the back and there saw defendant sitting at a table or desk with the tickets in front of him. He was arrested, the tickets were taken by the deputies, and on the testimony of these two and a third officer, was convicted and sentenced to pay a fine of $750, or serve six months in the county jail. The original opinion of this Court affirmed the conviction, but on motion of defendant, rehearing was granted.

The defendant contends that the tickets should not have been admitted into evidence because they were secured through an unlawful search and seizure. The place where the defendant was arrested and the tickets taken appears to have been a public place in front, with a desk or table in the rear, at which defendant was seated when the officers made the arrest. Defendant, in his brief, contends that there was some obstruction over, around or through which the officers had to pass in order to get to that part of the building in which defendant was seated. The nature of the obstruction does not appear however, and the two offi-

cers each testified that they had to go through no doors, nor over or around any obstruction. The officers had no search warrant, but went into the building merely to see if they could observe any form of gambling going on. In view of the circumstances, we can but hold that there was no unreasonable search or seizure, and that the tickets were properly admitted into evidence. In Thurman v. State, 116 Fla. 426, 156 So. 484, the officer entered a private closed room without a warrant.

Defendant also contends that by reason of the fact that no consideration was shown to have been paid for the tickets he could not be convicted of having lottery tickets in his possession, under Section 7667 (5509) C. G. L. In support of this contention, defendant makes this statement: "It is well settled in Florida, as in other States, that in order for there to be a lottery three elements must be present: prize, chance and consideration." We are unable to find wherein this Court has ever said or implied that proof of consideration for an individual lottery ticket was necessary for conviction under Section 7667 (5509) C. G. L. We do find this statement, however:

"In many jurisdictions with constitutional and statutory provisions inhibiting lotteries, the statutes have attempted to define them, and often such definitions are all-inclusive, embracing many species of gambling. Our constitutional provision suppressing lotteries does not attempt to define them, but in view of the prevailing conditions as supported by contemporaneous and subsequent history, we must conclude that the people of this State had in mind such a lottery as was referred to in Phalen v. Virginia, *supra*." (Quoted from Lee v. City of Miami, 121 Fla. 93, 163 So. 486, 101 A. L. R. 1115.)

In Phalen v. Virginia, 8 How. (U. S.) 163, 168, 12 L.

Ed. 1030, as quoted in Lee v. City of Miami, *supra,* the Supreme Court of the United States has said:

"Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the wide-spread pestilence of lotteries. The former are confined to a few patrons and places, but the latter infests every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple."

It is true that there are certain conditions which must be present before conviction under Section 7667 (5509) C. G. L. will be sustained, such as an interest in a lottery yet to be played, the disbursing of gifts or of money to the winners, and the passing of a consideration to the operator of the lottery, but there is nothing that we can find which requires as a condition precedent to the conviction of the possessor of a lottery ticket that he has paid or been paid something in consideration thereof.

In Little River Theatre Corporation, *et al.,* v. State *ex rel.* Hodge, 135 Fla. 854, 185 So. 855, this Court was asked to determine if what was commonly known as "Bank Night" held in the various theatres was a lottery. Under the facts of that case, the public was invited to register in a book kept for that purpose in the lobby of the theatre. This was done free of charge. In order to win a prize one must be registered, must have his name drawn from the drum containing all the names of those registered, and the person whose name was called must present himself on the stage of the theatre within three minutes after his name was called, but he was not required to purchase a ticket before he would be admitted to the theatre in the event his name was called and he was standing outside. The Court nevertheless held this to be a lottery. In the opinion Grimes v. State, 235 Ala. 192, 178 So. 73, was quoted from ex-

clusively, in which case it was also stated that even though the winner did not have to buy a ticket before he would be eligible for a prize, "Bank Night" was still a lottery. On the strength of these decisions, we cannot agree with defendant's contention that there must be consideration for the individual tickets before conviction will be allowed under our lottery statute.

Defendant relies in part on Hardison v. Coleman, 121 Fla. 892, 164 So. 520, as authority for his contention. He quotes the following from that case in his brief, showing that a lottery is " * * * a scheme having the elements of advertising or sale to any individual of tickets for public distribution and division of prizes according to the numbers upon a ticket *previously sold* which entitle the owner to participate in a drawing or distribution of prizes to be made at a date in the future." (Emphasis supplied by defendant.) The words "previously sold" do not mean to us that consideration must have passed for the individual tickets sold; rather they mean that the tickets must have been distributed to their individual holders anterior to the drawing, or other method by which the winner is to be ascertained. It would not change the status of the lottery if some of the tickets were distributed free to the general public.

It is a matter of common knowledge that the game known as "New York Bond" is a scheme for the distribution of prizes by lot or chance which has infected the whole of Hillsborough county. It is a lottery within the constitutional prohibition.

Defendant contends that in the original opinion the Court overlooked the evidence that there were three persons in the room, when we made the statement to the effect that circumstantial evidence will sustain a conviction where it leads "* * * on the whole to a reasonable and moral certainty, that the accused and no one else committed the

offense." Where the tickets were in the possession of defendant, where the evidence was directed at that point and he is the only one charged with the crime, the mere presence of two other persons, one the janitor of the building, neither being charged with the crime, does not change the effect of the testimony, and we cannot find wherein we have made a mistake in that statement.

There was much positive and direct testimony that the tickets were lottery (New York Bond) tickets, and that the lottery of which they were a part had not been played, the only apparent uncertainty being whether or not these tickets, from the personal knowledge of the witness, could be collected on. The tickets were dated July 22, the officers seizing them in the forenoon, and the winners were not to be announced until late afternoon of that same day. That fact, together with the other testimony introduced is sufficient to show that the tickets were tickets in a lottery not yet played.

No error appearing in the record of the case, and being unable to find wherein we have made a mistake in our former opinion, the former judgment of affirmance should be and is hereby adhered to and confirmed.

Affirmed.

WHITFIELD, P. J., BUFORD and CHAPMAN, J. J., concur.

BROWN, J., concurs in conclusion.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

BROWN, J. (concurring specially).—Admitting the contention of plaintiff in error that a lottery must embrace three elements—"prize, chance and consideration"—(which I am inclined to think is correct; see 38 Corpus Juris 286, et seq.),—I am of the opinion that there is strong circumstantial evidence in this case that a consideration had been

paid for at least some of the "New York bond" tickets which were found in plaintiff in error's possession at the time of his arrest, and which were introduced in evidence and sent up to this Court along with the record, when considered in connection with the testimony of the arresting officer who said he was thoroughly familiar as to how this kind of lottery was conducted, and who explained the significance of the numbers and figures on the tickets, which showed the amount which, according to his testimony, had been paid for each New York bond ticket. I am not now referring to the "parley" tickets, or the carbon copies of "New York bond" tickets which were also in the box, but to the New York bond tickets dated July 22, 1938, which were testified about by the officers.

I hardly think the "Bank Night" cases are applicable here. Nor do I think it necessary to resort to the holding in those cases to sustain the verdict in this case. With these qualifications, I concur in the above opinion.