AGNER, ROYCE, Associate judge.
The defendant appeals the denial of his motion for a judgment of acquittal made at the close of the State’s case and also urges reversal because of insufficiency of the evidence to support the judgment of guilt of child torture.
The defendant-appellant, Ronald Thomas Leath, was Pauline Thomas’ boyfriend. Pauline had two children. Ricky Clark, her oldest, was a 6 year old boy. Felecia Michelle, her daughter, was 3.
On the day of March 19, 1975, Pauline left her home in an apartment complex in *123 Jacksonville at 1:00 P.M. or thereabouts to keep an appointment with a doctor at 2:30 that afternoon. She left Ronald Thomas Leath and Michelle at her home. Ricky, 6, was at school. The mother, Pauline, returned about 7:00 P.M. Leath, Ricky and Michelle were there when she returned. Her brother and three other men were there also.
According to her testimony, Leath “told her what happened”. She looked at her daughter and observed that she was “kind of reddish, like when you usually burn your hands” on her legs and bottom. She went to the store, got some salve and rubbed it in. She testified Michelle didn’t seem to be in pain nor in extreme discomfort. She fed her and put her to bed. Pauline got up about 9:00 A.M. and observed blisters the size of a dime around the child’s legs, backside and vagina. She burst them and applied more salve.
The mother didn’t seek medical attention for the child until 5:00 or 6:00 P.M. of the next day, March 20, when some friends, Mrs. Hall and her mother, Mrs. Martin, came on a visit to look at Pauline’s new furniture. Even though Mrs. Hall had telephoned ahead of their visit, Pauline met them outside her apartment door and, to Mrs. Martin, seemed to be leaving. Mrs. Hall and Mrs. Martin went in, however, and Pauline came back in with them. Mrs. Martin, the older woman, immediately noticed blisters on Michelle’s feet, and after seeing the baby, forgot all about inspecting the furniture. She immediately asked had the baby been to a doctor, learned that she hadn’t, and immediately suggested that the baby needed medical attention. She offered her car as a means of taking the baby to the hospital and Pauline agreed that the baby be taken.
Pictures were taken of the baby in the emergency room. Twenty one of them were introduced into evidence by the State. We have reviewed them. They depict a badly burned child. Doctor Kenneth Corey examined the child at the time of her admission on March 20, 1975. He found first and second degree burns, the worst being in the genital area, extending back to but not involving the anal area, the inner thigh close to the hip, as well as the lower portion of the ankles and the feet. The feet were burned more severely on the tops than the bottoms; the injury was consistent with water burns and their location consistent with the child sitting in a bathtub of very hot water. The burn which extended along the vulva was a little too high to be consistent with merely sitting in water in his opinion.
Doctor Corey testified injuries of the type the child had would be obviously severe injuries to an average lay person. He also said they would be the cause of moderate to severe discomfort and described severe discomfort as being excruciating pain to the point that the person with such injuries could not perform any other function such as sleeping or eating.
Doctor Ernest Kimble examined the child on April 1, 1975, ten days after her hospital admission. He agreed with Doctor Corey that burns of this nature would be extremely painful. He stated that an injury of this type should be obvious to a person who is not medically trained. He also expressed his opinion that the burns were caused by water. The doctors agreed that they could not envision a child getting such burns voluntarily.
The State also introduced the testimony of 6 year old Ricky Clark. With the consent of defendant’s counsel, he was not sworn. The record reveals his testimony to be contradictory and difficult to weigh. However, Investigator Pruitt of the Duval Sheriff’s Department was permitted to testify as to a statement Ricky Clark made to him on the night of March 20, 1975.
The trial court had sustained defense counsel’s objection to Investigator Pruitt’s testimony based on its hearsay nature, but defense counsel withdrew his objection and the court allowed the statement to be ad *124 mitted into evidence. Ricky stated to Investigator Pruitt, that his father (appellant Leath) had put Michelle into the tub because she “had messed her britches”, tie also told Pruitt that the appellant had heated water on the stove and poured it into the tub.
The State also introduced, through Investigator Pruitt, the oral statement of the appellant to the effect that Michelle had come in from outside and had messed her pants; that he had changed her and was going to give her a bath; that he sent Ricky in to run water in the tub because someone had come to the door; and that he did not know how she got burned. Although he remained outside and apparently nearby, he did not hear the child crying and did not notice until later that anything was the matter with her.
Without objection by the defense, Mrs. Hall, one of the visiting neighbors, was permitted to testify that Ricky had told the detectives that his daddy boiled some water on the stove and put it in the tub and was giving the child a bath.
Upon this testimony, the State rested. The trial court denied a defense motion for a judgment of acquittal upon the ground that the evidence did not establish that the appellant had willfully inflicted injury on the child.
The trial court’s denial of the motion for a judgment of acquittal reaches this court with a presumption of correctness and the appellant has not demonstrated to us any error in the ruling. As the trier of fact it was the duty of the trial judge to observe the demeanor of all the witnesses, weigh their testimony, reconcile it if he could, and, if he could not, to reject what was unworthy of belief and to accept and rely upon that which he found worthy of belief. The 21 pictures in evidence of a badly burned 3 year old child, the testimony of 2 doctors that such burns would be obviously severe injuries to an average lay person and would have caused discomfort to a person so injured to the extent of not being able to sleep and eat was ample to permit the judge to conclude that the mother’s testimony to the effect that the child was fed and put to bed and spent a night without fretfulness was unbelievable, particularly when considered in the light of the witness, Martin’s testimony that the child, 24 hours later obviously needed a doctor’s attention. Also, the defendant, having acquiesced in allowing introduction of the statement of Ricky Clark is not now in position to complain about any harmful effect of that evidence. It is axiomatic that a motion for judgment of acquittal made pursuant to RCrP 3.380 admits all facts in evidence and every reasonable conclusion inferable therefrom. Brown v. State, 294 So.2d 128 (3 DCA 1974); Weldon v. State, 287 So.2d 133 (3 DCA 1974); Lynch v. State, 293 So.2d 44 (Fla.1974); Dancy v. State, 284 So.2d 452 (3 DCA 1973); and Victor v. State, 141 Fla. 508, 193 So. 762 (1940).
Neither can we agree with appellant’s other contention that the evidence is insufficient to support the judgment of guilt. The defense was that appellant had begun to bathe the child and was interrupted by persistent knocking at the door. His testimony was that he told the six year old Ricky to start the water and answered the knock. He heard no crying or other alarm and returned in perhaps fifteen minutes to find “smoking” water coming out of the tub faucet and Michelle standing in the tub with her hand on the shower knob trying to get out of the tub. He said that she was crying but not hollering or screaming loudly. The trial judge announced his rejection of this testimony and we may not substitute our judgment for his.
Finding as we do that the judgment of guilt is supported by sufficient evidence in the record, it is accordingly AFFIRMED.
MILLS and SMITH, JJ., concur.