545 So.2d 375 (1989)
Ogden KING, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 87-1465.
District Court of Appeal of Florida, Fourth District.
May 31, 1989.
Rehearing and Rehearing Denied July 19, 1989.
*376 E. Ross Zimmerman of Weinstein & Zimmerman, P.A., Tamarac, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, Robert S. Jaegers (on the brief), and Joan Fowler, Asst. Attys. Gen., West Palm Beach, for appellee.
Rehearing and Rehearing En Banc Denied July 19, 1989.
PER CURIAM.
This is an appeal by appellant, Ogden King, from his conviction of second degree murder for a bizarre and tragic drug related death. Although we reject King's claim that the charges and evidence are not legally sufficient to sustain his conviction, we reverse for a new trial because we conclude that the trial court erroneously admitted evidence of other misconduct by King not relevant to the present charge.
In the first count of the indictment, King was charged with first degree murder after the victim, his girlfriend, died at the conclusion of an all night bout of drug abuse and sex. The language in the indictment stated in part that King was responsible for the victim's death "unlawfully and from a premeditated design ... by causing neck compression and providing cocaine, contrary to Florida Statute 782.04(1)(a)." (emphasis added). The trial court denied King's motion to dismiss the indictment, strike surplusage, or to require the State to prosecute under only one theory for first degree murder, i.e. either cocaine or strangulation. *377 At trial, the court admitted evidence concerning King's relationship with his ex-wife, and a previous argument King had with his girlfriend, the victim in this case. The court also admitted, over King's objection, a close-up photograph of the victim's face as she was found at the scene. King moved for a directed verdict at the close of the state's case, and at the close of all of the evidence, on the ground that the state had failed to offer any evidence to show that King intentionally provided cocaine to the victim, or intentionally strangled the victim. These motions were denied and King was found guilty of the lesser offense of second degree murder.

MOTION TO DISMISS
King argues that it was error for the trial court to allow the indictment to encompass two methods of first degree murder in a single count, i.e. providing cocaine and causing neck compression. The caselaw on this point clearly establishes that a single count may contain multiple methods of committing the same offense. See Hamilton v. State, 129 Fla. 219, 176 So. 89 (1937); Croft v. State, 109 Fla. 188, 146 So. 649 (1933); Billings v. State, 89 Fla. 309, 103 So. 628 (1925); Bean v. State, 469 So.2d 768 (Fla. 5th DCA 1984). We reject King's claim that the indictment in this case was legally flawed because the state alleged that death was caused intentionally by both providing cocaine and causing neck compression.

SUFFICIENCY OF THE EVIDENCE
Neither do we find error in the trial court denying King's motions for directed verdict. The thrust of King's argument under this point is that the state failed to offer proof of his intent.
There was conflicting testimony presented at trial on the bizarre nature of the victim's death and how the victim appeared when she was found at the scene. The state claimed that King intentionally gave the victim a fatal amount of cocaine and intentionally strangled her. King claimed that the death resulted from an accidental overdose of cocaine and that the marks on the body were from his attempts to administer Cardio-Pulmonary Resuscitation (CPR) to the victim. The evidence reflected that there were a lot of injuries on the victim's external body. Each side presented conflicting explanations as to the cause and effects of the injuries.
James A. Benz, medical examiner for Palm Beach County, testified that in his opinion the injuries were the result of a beating, but that they could also be explained as an attempt at CPR by a person under the influence of cocaine. He stated that cocaine was a major factor in the victim's death, but in its absence the cause of death would have been strangulation. He stated that the circumstances of the scene indicated to him that a struggle had occurred. Thomas Carroll, the Chief Toxicologist at the county medical examiners office, the state's witness, testified that there was 13.5 milligram per liter of cocaine in the victim's system, an amount more than sufficient to cause death. Significant amounts of cocaine were revealed in vaginal and anal swabs. Dr. Carroll testified that cocaine injected into the vagina or anus is absorbed more quickly and results in higher concentrations of cocaine in the blood. The level of cocaine found in the victim's blood could have possibly caused convulsions, neurological problems, and respiratory collapse or weakening.
Dr. Robert K. Wright, a forensic pathologist, testified that a hyoid fracture on the victim's body was high enough that it could be the product of a mistake in the administration of CPR. He also felt the blood spatterings could be consistent with an attempt at CPR. With the exception of an eye injury, Dr. Wright did not believe any of the victim's injuries were consistent with a beating. He also testified that King's failure to call the police immediately was common for a person on a drug overdose. Dr. Wright stated that an autopsy could not conclusively determine whether the actual cause of death was strangulation or cocaine, but he concluded that the death was an accidental drug overdose. Dr. O'Brien, a specialist in drug and alcohol abuse testified that drug users often act *378 frantically. He testified that King in this case could have been acting frantically in administering CPR. Dr. O'Brien said that King may not have been aware of how much force he was using.
A trial court should rarely, if ever, grant a judgment of acquittal based on the state's failure to prove mental intent. Brewer v. State, 413 So.2d 1217 (Fla. 5th DCA 1982). This is because the proof of intent usually consists of the surrounding circumstances of the case. Id. Where reasonable persons may differ as to the existence of facts tending to prove ultimate facts, or inferences to be drawn from the facts, the case should be submitted to the jury. Victor v. State, 141 Fla. 508, 193 So. 762 (1939). A directed verdict cannot be given if the testimony is conflicting, or lends to different reasonable inferences, tending to prove the issues. Snipes v. State, 154 Fla. 262, 17 So.2d 93 (1944).
In the instant case, the evidence lends itself to different reasonable inferences on the issue of intent. The injuries on the victim were such that the state's experts testified that they could be consistent with a beating. There was also evidence that King had quarrelled with the victim a week prior to, and the night of, the incident. There was testimony that King did not call the police right away, but went off to think about it first. King also cleaned up the hotel room and took a shower after discovering the victim's dead body. Finally, large and lethal doses of cocaine were found in the victim's body, more than enough to cause her death. Given these facts, the trial court properly submitted the case to the jury to determine if King was criminally liable for the death of the victim.

THE PHOTOGRAPH
The trial court allowed into evidence a close-up photograph of the victim as she appeared at the scene of the incident. King argues that the photograph was irrelevant and prejudicial. The trial court's decision to admit a photograph into evidence should not be disturbed unless it was clearly abusive or patently in error. Garmise v. State, 311 So.2d 747 (Fla. 3d DCA 1975), cert. denied, 429 U.S. 998, 97 S.Ct. 524, 50 L.Ed.2d 608 (1976). The fact that a photograph is gruesome does not bar admissibility if it is relevant to any fact at issue. Adams v. State, 412 So.2d 850 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982); Young v. State, 234 So.2d 341 (Fla. 1970). A photograph is relevant if it illustrates the testimony of a witness or assists the jury in understanding the testimony. Garmise. It is also relevant if it bears on the issues of: the nature and extent of injuries; nature and force of violence used; premeditation; or intent. Wilson v. State, 436 So.2d 908 (Fla. 1983).
In the instant case, the medical examiners used the photograph to help explain the presence and type of injuries on the victim's body. The photograph was also used to illustrate what the scene looked like as it was found. The medical examiners discussed the blood spatterings on the walls, with the assistance of the photograph, in order to give opinions on whether a struggle occurred or not. Because the photograph was relevant to facts in issue in the instant case, we do not believe it has been demonstrated that the admission of the photograph into evidence was an abuse of discretion. Adams.

EVIDENCE OF OTHER MISCONDUCT
King complains of the admission of evidence of King's relationship with his ex-wife and particularly of an argument that King had with her. The ex-wife, Elizabeth Whitehurst, testified that whenever she and King had been drinking, they would usually get into a fight. Whitehurst also testified that after she had separated from King, she got into a fight with him during which he knocked her down, shook her head against the wooden arm of a couch, and pulled her hair. Ms. Whitehurst's friend, Terry Summers, who Ms. Whitehurst lived with after her separation from King, also testified that she witnessed the same fight. Both Ms. Whitehurst and Ms. Summers testified that during the fight, King put his hands around Ms. Whitehurst's neck when he pushed her *379 on the couch. However, neither witness claimed that he attempted to strangle Ms. Whitehurst. The state also introduced testimony concerning a prior fight that King had with the victim.
Testimony of other misconduct not directly related to the incident in question may be admissible when it is demonstrated to be relevant to prove a material fact in issue, such as intent, or absence of mistake or accident, but is inadmissable when the evidence is relevant solely to prove bad character or propensity for misconduct. § 90.404(2)(a), Fla. Stat. (1985); Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1960). In Donaldson v. State, 369 So.2d 691 (Fla. 1st DCA 1979), it was held to be reversible error to admit evidence that the defendant had beaten his wife on prior occasions where the defendant was being tried on charges of battery of another person. The case law contains countless other rulings to the same effect. The point is that, absent some specific relevancy to the case at hand, a defendant may not be proven guilty of a particular crime by proof that he is generally a bad person or has been guilty of other misconduct.
We find no error as to the admission of evidence of the prior fight with the victim. The appellant's prior relationship with the victim was at issue and the subject of considerable evidence presented at trial, and we find no error by the trial court in admitting that evidence. However, we do not believe that evidence of appellant's relationship with his former wife was shown to be relevant to the incident in question. Rather, it appears that the evidence was offered only to demonstrate that the appellant had a propensity to fight with women with whom he had a relationship. We do not believe the state was entitled to prove that King was guilty of murder under the bizarre circumstances shown here, by showing that he had fought, even physically, with other women. Other than demonstrating a propensity for fighting or arguing, the state has not demonstrated how those previous fights with other women are relevant to prove his conduct at the time in question. We find a similar lack of relevance if it was the effect of alcohol on appellant that the state was trying to demonstrate.
Usually, the admission of irrelevant evidence of prior misconduct is harmful error because there is the danger that the jury will consider the alleged bad character of the defendant in determining guilt. Straight v. State, 397 So.2d 903 (Fla. 1981). An admission of irrelevant testimony is harmless only when the proof of guilt is clear and convincing even without it. Bricker v. State, 462 So.2d 556 (Fla. 3d DCA 1985). Under this analysis it matters not that there is other evidence to support the verdict. The burden is on the state to prove beyond a reasonable doubt that the irrelevant testimony did not contribute to the verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
We conclude that the error was harmful here. In the instant case the jury returned a verdict of second degree murder. For a verdict of second degree murder, Florida requires a finding of a depraved mind. See § 782.04(2), Fla. Stat. (1985). The testimony of appellant's misconduct toward his ex-wife could have influenced the jury to render a finding of a depraved mind. Under these circumstances we simply cannot conclude, as required by the Florida Supreme Court's holding in DiGuilio, that this evidence did not contribute to the verdict.
Accordingly, we affirm in part and reverse and remand for a new trial in accord with the opinion set out above.
DOWNEY and ANSTEAD, JJ., and RIVKIND, LEONARD, Associate Judge, concur.