**Peter Anthony GEZZI,**
**Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee**
**(Plaintiff).**

**No. 88–266.**

Supreme Court of Wyoming.

Sept. 27, 1989.

Leonard Munker, State Public Defender, Cheyenne, Wyoming Defender Aid Program: Gerald M. Gallivan, Director, and Samuel B. Benham, Student Intern, Laramie, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Cheyenne, Jo Messex Casey, Student Intern, Prosecution Assistance Program, Laramie, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Anthony Gezzi (Gezzi) was convicted of two counts of immoral or indecent acts with his daughter, in violation of W.S. 14–3–105 (July 1986 Repl.). On appeal, he contends that the trial court erroneously admitted evidence of his prior bad acts involving earlier similar immoral or indecent acts with another of his daughters.

We affirm.

On Friday, December 4, 1987, the victim and daughter of Gezzi, seven-year old G.G., watched a good touch/bad touch film at school with her classmates. After the film, G.G. went to her regularly scheduled group counseling session with her counselor. While in session, G.G. revealed to her counselor that her father, Gezzi, had "bad touched" her or touched her private parts, and had been doing so since G.G. was in kindergarten. She stated that the latest incidents had occurred the previous Monday and Wednesday of that week, November 30 and December 2, 1987, when her father made her touch his penis, touched his penis to her and touched her with his hands between her legs. She further stated that her father had told her not to tell anyone because her mother and brothers would not love her anymore. After G.G. repeated her statements to the police and to the Department of Public Assistance and Social Services, Gezzi moved out of the family home. Following an investigation, on March 15, 1988, a criminal complaint was filed against Gezzi charging him with two counts of violating W.S. 14–3–105.[1]

G.G. was examined by a pediatrician who concluded from the physical evidence, including scarring and thickening of the hymen and a larger than normal hymenal opening for a seven year old, that G.G. had been the victim of chronic sexual abuse, and that such physical symptoms could not have been caused by masturbation. A jury trial was held on June 7 through 10, 1988. At trial, a pediatrician for the defense testi-

fied that the physical evidence the first pediatrician relied on in making her conclusion could be consistent with but was inconclusive of sexual abuse, and could be consistent with masturbation. This pediatrician did not examine G.G.

Gezzi did not testify at trial; his counsel's theory of defense was that Gezzi was innocent of the crime charged. In so defending, his counsel attacked G.G.'s credibility by introducing evidence at trial indicating that G.G. had several behavioral problems, the most important of which were a propensity to lie, to make up stories about her family and to distort reality more than most children her age. Because of these acknowledged behavioral problems, after an in-chambers hearing the prosecution introduced the testimony of G.G.'s older sister, P.G. P.G. testified that Gezzi had sexually abused her for almost five years before she finally ran away from home. She stated that she had reported the sexual abuse, that her father admitted it, that the family went into counseling after the report, but that no charges were brought against him. Further evidence of the sexual abuse of P.G. was introduced through other witnesses. Gezzi objected to the introduction of this evidence of prior bad acts under W.R.E. 404(b), stating that the only purpose the prosecution could have in introducing it was to inflame the jury. The trial court disagreed, finding that the evidence was admissible on the issue of G.G.'s credibility.

On June 10, 1988, the jury found Gezzi guilty of two counts of immoral or indecent acts with a child, as proscribed by W.S. 14–3–105. The trial court entered judgment on August 6, 1988, sentenced Gezzi to two to three years on each count, suspended the sentence on the second count and imposed three years probation to be served at the end of the first sentence. This appeal followed.

Gezzi contends that P.G.'s testimony implicating him of prior sexual activi-

---

**1.** W.S. 14–3–105 provides in part:
Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child

to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony * * *.

ty with her was inadmissible under W.R.E. 404(b). The rule provides:

> *Other crimes, wrongs or acts.*—Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect upon the accused's character. Unquestionably, Wyoming is committed to applying the 404(b) general rule of exclusion in criminal cases. *Elliott v. State,* 600 P.2d 1044, 1047 (Wyo.1979). Yet, several exceptions to the exclusionary rule exist. The exceptions noted in Rule 404(b) under which evidence of other crimes may be admissible are not exhaustive, but rather are illustrative. *United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980); *United States v. Beechum,* 582 F.2d 898, n. 15 (5th Cir.1978) [2]; *Makinen v. State,* 737 P.2d 345, 347 (Wyo.1987); *Brown v. State,* 736 P.2d 1110, 1111, n. 1 (Wyo.1987); *Hopkinson v. State,* 632 P.2d 79, 127 (Wyo.1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). "We have previously recognized exceptions to the 404(b) exclusionary rule other than those catalogued in the rule." *Brown,* 736 P.2d at 1111, n. 1. This recognition of exceptions apart from those suggested in the rule affords the trial courts greater discretion in the admission of such evidence. Consequently, in our review of a trial court's admission of similar acts evidence we look to see if there has been an abuse of that discretion in light of our previous decisions. *Elliott,* 600 P.2d at 1049.

As early as 1927, this court held that in the context of sexual offenses other similar acts of the defendant could be admitted if they involved the victim of the charged offense. *Strand v. State,* 36 Wyo. 78, 252 P. 1030 (1927) (in prosecution for rape of a ten-year old, the court properly admitted evidence of other acts of intercourse occurring between the victim and the accused to show "the lustful disposition and intent of the defendant.") See also *State v. Quirk,* 38 Wyo. 462, 268 P. 189 (1928) (citing *Strand,* for the rule of admission); and *State v. Koch,* 64 Wyo. 175, 189 P.2d 162 (1948) (citing *Strand* and *Quirk* for the general rule and noting that most jurisdictions permit such testimony to corroborate the victim's testimony of the offense charged or to prove identity of the perpetrator). In recent years we have expanded on the exceptions to Rule 404(b) in the context of sexual offenses and have permitted the admission of testimony of third persons as to other similar acts between themselves and the accused.[3] *Brown;* and *Elliott.* These cases, recognizing the nationally predominant trend towards admission of third party testimony of similar acts, are helpful to our determination here.[4]

---

**2.** Rule 404(b), Federal Rules of Evidence is identical to Rule 404(b), Wyoming Rules of Evidence. Therefore, we find federal cases addressing this rule instructive.

**3.** In 2 D. Louisell and C. Mueller, *Federal Evidence,* § 140, at 36 (Supp. Aug.1989), the authors characterize Rule 404(b) as an "inclusionary" rule, as opposed to the traditional characterization of the rule as "exclusionary," thus emphasizing the more liberal stance taken by most jurisdictions regarding the admission of prior bad acts evidence. Nine federal circuit courts have determined that Congress' use of "such as" in Rule 404(b) commits the federal courts to this inclusionary approach. See e.g. *United States v. Moore,* 732 F.2d 983 (D.C.Cir. 1984); and *United States v. Gustafson,* 728 F.2d 1078 (8th Cir.1984), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). Also,

thirty state jurisdictions have adopted evidence codes patterned after the liberal federal rules. Under today's liberal position, exclusion is the exception to the rule of inclusion, which is the norm. "The true problem in administering this inclusionary principle is not to find a pigeonhole in which the proof might fit, but to determine whether the prior act does tend to prove something other than propensity and, if so, to determine whether its particular relevancy outweighs the risk of prejudice—that is, the risk that the jury will either draw the forbidden and deadly three-step inference from bad act to bad person to guilt, or give way to unthinking and emotional impulse to punish." *Id.*

**4.** Several jurisdictions liberally recognize the admissibility of prior bad acts evidence in sexual offenses for various purposes. See *Bowden v. State,* 538 So.2d 1226 (Ala.1988) (evidence ad-

missible to prove any "material other purpose," including identity and motive); *Soper v. State,* 731 P.2d 587 (Alaska App.1987) (evidence of prior acts with older sisters of victim, also daughters of defendant, was admissible to show the defendant's lewd disposition and was highly corroborative of the victim's testimony); *State v. Weatherbee,* 158 Ariz. 303, 762 P.2d 590 (1988) (admissible to show common scheme and emotional propensity); *Young v. State,* 296 Ark. 394, 757 S.W.2d 544 (1988) (evidence of prior occurrences between the victim and the accused is admissible under Arkansas Rule of Evidence 404(b) if it is independently relevant to the main issue in the sense of tending to prove some material point rather than to prove the defendant is a criminal, and can be admissible to show sexual instinct. A cautionary instruction must be given. Evidence of acts occurring between defendant and third party is not admissible under any of the exceptions.); *People v. Hunt,* 72 Cal.App.3d 190, 139 Cal.Rptr. 675 (2d Dist.1977) (corroboration); *Adrian v. People,* 770 P.2d 1243 (Colo.1989) (evidence admissible if offered for the limited purpose of establishing a common plan, scheme, design, identity, *modus operandi,* motive, guilty knowledge or intent. However, the prosecution must first have a *prima facie* case before such evidence can be introduced. Moreover, a limiting instruction must be given. Finally, the remoteness of the crime (in this case, fifteen years) affects only the weight not the admissibility of the evidence.); *State v. Hauck,* 172 Conn. 140, 374 A.2d 150 (1976) (common scheme or design); *Snowden v. State,* 537 So.2d 1383 (Fla. App.1989) (identity, credibility of witness); *Calloway v. State,* 520 So.2d 665 (Fla.App.1988) (when crime occurs in the familial setting and the victim is the only witness to the crime, the victim's credibility becomes a focal issue; therefore, the court relaxed the strict standard applicable to similar acts evidence and allowed evidence of a sexual battery of another family member as relevant to *modus operandi,* scheme, plan and design in order to corroborate the victim's testimony); *Beasley v. State,* 518 So.2d 917 (Fla.1988) (opportunity); *McGuire v. State,* 188 Ga.App. 891, 374 S.E.2d 816 (1988) (notes that an exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses; is admissible to show motive, scheme, plan, bent of mind and course of conduct); *Conaway v. State,* 188 Ga.App. 561, 373 S.E.2d 660 (1988) (evidence of prior bad acts with victim's sister admissible to show lustful disposition and the defendant's attitude toward the female members of his family); *State v. Greensweig,* 102 Idaho 794, 641 P.2d 340 (1982) (intent); *People v. Daniels,* 172 Ill.App.3d 616, 122 Ill.Dec. 687, 527 N.E.2d 59 (2d Dist.1988) (evidence admissible to show motive, intent, identity, absence of mistake, knowledge, common design, scheme of plan and *modus operandi*); *Hickman v. State,* 537 N.E.2d 64 (Ind.App. 1989) (depraved sexual instinct); *Bixler v. State,* 537 N.E.2d 21 (Ind.1989) (depraved sexual instinct); *Lutz v. State,* 536 N.E.2d 526 (Ind.App. 1989) (depraved sexual instinct); *Stwalley v. State,* 534 N.E.2d 229 (Ind.1989) (evidence admissible to show a depraved sexual instinct and to bolster the credibility of the complaining witness where the acts seem improbable.); *Andrews v. State,* 529 N.E.2d 360 (Ind.App.1988) (evidence is not admissible on question of guilt but is for depraved sexual instinct, motive, intent, purpose, identity, common scheme or plan. The rationale is to bolster the credibility of the prosecution's witness when the acts chargeable seem improbable, or the acts are continuing, and it is likely that they occurred before or will occur again.); *State v. Plaster,* 424 N.W.2d 226 (Iowa 1988) (evidence admissible to prove motive, opportunity, intent, preparation, plan, identity, knowledge, or absence of mistake or accident. The court noted that the list of purposes listed in I.R.E. 404(b) was not exclusive. "The key is whether the challenged evidence is relevant and material to some legitimate issue other than the defendant's general propensity to commit wrongful acts. If the evidence meets this litmus test, it is *prima facie* admissible, notwity to demonstrate the accused's bad character." Sex cases, the court noted, are like signature crimes; thus, prior evidence would be highly relevant.); *State v. Hampton,* 215 Kan. 907, 529 P.2d 127 (1974) (intent, plan of operation); *State v. Walker,* 540 So.2d 1059 (La.App.1989) (evidence admissible to prove *res gestae* if prior act is part of a whole deed); *State v. Baker,* 535 So.2d 861 (La.App.1988) (evidence admitted for corroboration of the offense and to show the intimate relations between the parties, the defendant's lustful disposition, probability of commission of the offense and to rebut defendant's alibi); *State v. Howard,* 520 So.2d 1150 (La.App. 1987) (citing *Elliott,* the court held that evidence was admissible to show motive, plan, intent, lustful disposition, unnatural desires of sexual intercourse, propensity, inclination, disposition toward sex in general, opportunity to systematically engage in nonconsensual relations with daughters; was also permitted to corroborate the victim's testimony); *State v. Ouellette,* 544 A.2d 761 (Me.1988) (evidence of prior conviction on sex related crime was held admissible to show the relationship between the parties); *People v. Burton,* 28 Mich.App. 253, 184 N.W.2d 336 (1970) (credibility of complaining victim, intent, scheme, plan or system); *State v. Shamp,* 422 N.W.2d 520 (Minn.App.1988) (common scheme); *State v. Lingle,* 759 S.W.2d 638 (Mo. App.1988) (in rape of an adult, evidence of prior bad acts was admissible to show common plan, scheme or depraved sexual instinct); *State v. Simerly,* 463 S.W.2d 846 (Mo.1971) (evidence of prior incestuous acts with sister of victim admissible for corroborative purposes.); *State v. Eiler,* 762 P.2d 210 (Mont.1988) (evidence admissible to show plan, motive, opportunity. The court applied a four-part test, first enunciated in *Just v. State,* 184 Mont. 262, 602 P.2d 957 (1979), to determine whether the evidence would be admitted. The four factors to be

The facts in *Brown* and *Elliott* are virtually identical to those in the case before us. In *Elliott*, the defendant was charged with sexually assaulting his step-daughter; at trial the victim's older sister testified regarding three prior instances of sexual assault involving the defendant and herself. In *Brown*, the defendant was charged with incest with his natural daughter; at trial the victim's half-sister and adopted daughter of the defendant testified about a continuing course of conduct involving sexual intercourse or sexual contact between herself and the defendant occurring over a period of several years beginning when the half-sister was about six years old. In each case, the trial court admitted the testimony for the purpose of showing motive. *Brown*, 736 P.2d at 1113; *Elliott*, 600 P.2d at 1048. We said:

considered are: (1) similarity of the crimes or acts; (2) nearness in time; (3) tendency of the evidence to establish a common scheme, plan, or system; and (4) whether the probative value of the evidence was outweighed by its prejudicial effect. The court noted that the acts need not be identical but only "sufficiently similar" to justify their admission, and that a five-year lapse of time between the charged act and the prior acts was not too remote (defendant was stepfather to the complaining victim through one marriage and stepfather of the prior victim through a previous marriage). The lack of opportunity caused the time lapse to be insignificant); *State v. Gilpin*, 756 P.2d 445 (Mont.1988) (admissible for general 404(b) purposes but must have: (1) notice to the defendant prior to trial of the intent to introduce such evidence; (2) an admonition to the jury of the evidence's limited purpose; and (3) a similar cautionary instruction); *State v. Hoffmeyer*, 187 Neb. 701, 193 N.W.2d 760 (1972) (intent or motive); *Findley v. State*, 94 Nev. 212, 577 P.2d 867 (1978) (intent, lack of mistake); *State v. Johnson*, 130 N.H. 578, 547 A.2d 213 (1988) (evidence of prior bad acts with victim allowed to show mode of operation and on question of coercion to show system of the crime, activity, identity, motive, and context); · *People v. Velasquez*, 141 A.D.2d 882, 530 N.Y.S.2d 208 (2 Dept.1988) (state of mind); *People v. Bagarozy*, 132 A.D.2d 225, 522 N.Y.S.2d 848 (1 Dept.1987) (noting the general 404(b) exceptions of motive, intent, absence of mistake or accident, common scheme or plan and identity, the court admitted prior bad acts evidence to show the defendant's amorous design); *State v. Thomas*, 310 N.C. 369, 312 S.E.2d 458 (1984) (identity and in response to defense alibi); *State v. Jackson*, 82 Ohio App. 318, 81 N.E.2d 546 (1948) (motive, passion, emotion, or degeneracy of same type prompting commission of the offense); *Jett v. State*, 525 P.2d 1247 (Okl.Cr.1974) (system or plan characterized by peculiar method of operation); *State v. Woodson*, 551 A.2d 1187 (R.I.1988) (evidence admissible to show design, plan, or scheme; also admissible to show defendant's lewd disposition or intent if it is reasonably necessary to show a material aspect of the case); *State v. Loop*, 422 N.E.2d 420 (S.D.1988) (motive, intent, opportunity, plan, preparation, knowledge, absence of mistake or accident, or tending to show acts constituting continuous offenses); *Turner v. State*, 754 S.W.2d 668 (Tex.Cr.App.1988) (citing *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App. 1972), the court listed several common exceptions to the general rule prohibiting admission of extraneous offenses: evidence of extraneous offenses committed by accused has been held admissible: (1) to show the *context* in which the criminal act occurred—res gestae—under the reasoning that events do not occur in a vacuum and the jury has the right to hear what occurred immediately before and after commission of the act so that they may realistically evaluate the evidence; (2) to circumstantially prove *identity* where the state lacks direct evidence on the issue; (3) to prove *scienter*, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself; (4) to prove *malice* or *state of mind*, when malice is essential and cannot be inferred from the criminal act; (5) to show *motive*, where the commission of the offense is either conditioned upon commission of extraneous offenses or is part of a continuing plan or scheme with the charged crime; and (6) to refute defense theories raised by the defendant. The court noted that while this list is not exhaustive, rote application of the exceptions should be avoided and an in-depth analysis of the probative value of the evidence should be performed in every case.); *State v. Hurley*, 150 Vt. 165, 552 A.2d 382 (1988) (citing *Elliott*, the court noted that although evidence of prior bad acts is admissible under the exceptions in V.R.E. 404(b) to show *modus operandi*, or consistency or similarity of plan or pattern, in this case a time lapse of ten to twelve years operated to make relevance of the prior acts not available; but Cf. *State v. Parker*, 149 Vt. 393, 545 A.2d 512 (1988) (probative value of defendant's prior sexual assault on another male juvenile, although remote in time, was highly significant in its tendency to establish motive, plan, opportunity, intent, preparation); *State v. Schut*, 71 Wash.2d 400, 429 P.2d 126 (1967) (evidence of prior acts with victim admissible to show lustful inclination); *State v. Mink*, 146 Wis.2d 1, 429 N.W.2d 99 (App.1988) (noting the greater latitude of admissibility of prior bad acts in the context of sex crimes with a minor, the court permitted evidence to show motive and to corroborate the victim's testimony against a credibility attack by the defense).

Incest involves aberrant sexual behavior—it is a type of sexual deviancy that is difficult to understand. Therefore, a trier of fact might well wonder what would motivate the accused to behave in such bizarre manner. The evidence of prior sexual acts then was probative under the motive exception because of the unusual sexual behavior involved. It seems, however, that motive is usually thought of as the reason the crime was committed. If motive equates to reason, then perhaps appellant's motive for having sexual relations with his younger daughter was that the older daughter was no longer available and the younger daughter was taking her place. The older daughter's testimony would be admissible for this purpose.

If the accused had a predilection to deviant sexual practices with young female relatives, it would not be unreasonable for the trier of fact to determine that he had a motive to commit the acts complained of by the victim in this case.

Consistent with our holding in *Elliott*, we determine the admission of testimony regarding conduct of appellant described by the victim and her older sister was justified as proof of motive and was sufficiently similar to meet the relevancy requirements of Rule 404(b).

*Brown*, 736 P.2d at 1113:

■ Gezzi began sexually molesting his older daughter, P.G., when she was ten years old, and often with G.G. present in the same bed. When P.G. was thirteen, she reported the sexual abuse, which Gezzi admitted to. No charges were brought and the family went into counseling. However, the sexual abuse of P.G. did not stop. Finally, when she turned fifteen, P.G. ran away from home to escape her father's continued molestation and was ultimately removed from the home. Shortly after her departure, Gezzi began molesting five-year-old G.G. and continued the abuse for two years until G.G. reported the incidents involved here. In both situations, Gezzi told the girls that if they told anyone of his abuse, their mother and brothers would not love them anymore.

Under the facts of this case and the rationale of *Brown* and *Elliott*, the evidence may have been properly admitted for the purpose of showing motive; the trial court ruled that the evidence was admissible on the issue of G.G.'s credibility, which was attacked by the defense. In discussing the admission of prior bad acts testimony for corroborative purposes, the author of Comment, *Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses*, 25 UCLA L.Rev. 261 (1977), aptly notes that in sex offenses where the victim is acquainted with the accused the victim's credibility will be of paramount importance.

The victim's credibility or apparent lack thereof may be determinative on the question of the defendant's ultimate guilt or innocence. In many sex crimes, where the only eyewitnesses are the complaining witness and the perpetrator, and where there is a dearth of any independent physical evidence tending to establish the crime's commission, admission of corroborative evidence serves the dual purpose of reducing the probability that the prosecuting witness is lying, while at the same time increasing the probability that the defendant committed the crime.

*Id.* at 286. Similarly, this court has noted that "one of the principal reasons for allowing evidence of prior acts or crimes in cases involving sex offenses is the fact that the usual situation places the testimony of a victim against that of the accused, increasing the pertinency of intent, knowledge, plan, motive, etc." *Grabill v. State*, 621 P.2d 802, 810 (Wyo.1980). See also C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5248 (1978). We quote from a case cited by Justice Thomas in the *Elliott* opinion:

The [prior bad acts] testimony was also admissible * * * as evidence tending to buttress the credibility of M and S, minor witnesses who had been charged by the accused with fabricating the evidence against him. Where proof necessarily depends on the credibility of testimony of child witnesses about sexual acts performed in private, and where the accusations of misconduct are flatly denied by

the accused, evidence of similar acts may be received on the issue of the credibility of the minor witnesses.

*People v. Fritts,* 72 Cal.App.3d 319, 325, 140 Cal.Rptr. 94, 97 (1977). This language is particularly pertinent here. Although not testifying himself, Gezzi attacked G.G.'s credibility through the introduction, in defense to the charge, of the testimony of Mrs. Gezzi and a social worker that G.G. had a tendency to lie. Moreover, the physical evidence admitted at trial was inconclusive as to the cause of G.G.'s physical symptoms. P.G.'s testimony relating a course of sexual misconduct occurring between herself and Gezzi was sufficiently similar to the events of molestation occurring between Gezzi and G.G. to be particularly relevant under Rule 404(b) for the purpose of corroborating G.G.'s testimony.

Our inquiry does not end here, however. Although relevant, P.G.'s testimony may not be admissible if its prejudicial effect outweighs its probative value. W.R.E. 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In *Elliott,* 600 P.2d at 1049, we said:

> The function of performing the comparisons required by Rule 403, W.R.E., generally is held to be discretionary with the trial court. The fact that the evidence is detrimental to the defendant is neutral. For the prejudice factor to come into play the court must conclude that it is unfair. *United States v. Dolliole,* 597 F.2d 102 (7th Cir.1979).

Evaluating the evidence in this case in light of our earlier decisions and those of other jurisdictions, we cannot say that the danger of unfair prejudice to Gezzi outweighs the probative value of P.G.'s testimony of earlier acts of sexual misconduct involving Gezzi and herself. The evidence was properly admitted for the purpose of corroborating the testimony of G.G., whose credibility was directly placed in issue. The trial court did not abuse its discretion.

Affirmed.

URBIGKIT, Justice, dissenting.

The majority assumptively claims Peter Gezzi attacked G.G.'s credibility, in part, by simply presenting the defense that he "was innocent of the crime charged." [1] This audacity to maintain his innocence permitted the prosecutor to bring onto the witness stand a third party to recite prior bad acts by Gezzi. This holding permits a prosecutor, faced with a weak case and an accused citizen with the audacity to proclaim his or her innocence, to open the floodgates to drown the reputation of the accused in a brackish litany of prior bad acts. Prior bad acts should not be used to grease the wheels of justice simply to crush the accused who maintain their innocence to criminal charges.

I would feel considerably more comfortable if Gezzi had been convicted on relevant evidence of his commission of the charged offenses. In dissent, I claim Gezzi should have been charged with incest with his older daughter if her testimony to that effect was allowed in open court when he was being tried for such acts with his younger daughter—then he would have been afforded a realistic opportunity to defend himself through effective counsel. I cannot justify the admissibility of evidence on the basis that our common constitutional right to defend was exercised by this particular defendant. I dissent.

It is generally stated to be the basic foundation of English law that the common law rule excluding evidence of other crimes, wrongs and acts originated in the Treason Act of 1695 "to destroy the reign of terror of the Star Chamber." Reed, *Trial by Propensity: Admission of Other Criminal Acts Evidenced in Federal Criminal Trials,* 50 U.Cin.L.Rev. 713, 717 (1981).[2]

Professor Reed states:

1. See p. 986, *infra.*

Since the close of the eighteenth century, the propensity rule has been one of the fundamental restraints on prosecutorial proof in American criminal trials. The propensity rule excludes evidence offered to establish the accused's disposition to commit crime. The rule had its roots in the accusative, as opposed to inquisitorial, nature of the Anglo–American criminal process. Under an accusative system, the state must establish that the accused did some act forbidden by law. In contrast, *an inquisitorial process assumes the accused committed the crime and imposes upon him the burden of establishing his innocence.* The courts admit evidence of the accused's prior criminal activity which the accused must also overcome.

* * * The federal rules' expansion of the scope of prosecutorial use of evidence of other crimes and the federal courts' willingness to admit such evidence is subtly transforming the American criminal justice system from an accusative to an inquisitorial process.

*Id.* at 713–14 (emphasis added and footnotes omitted).

Anticipating the prosecutorial enthusiasm for bad acts evidence, Justice Jackson wrote in 1948:

Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, *Greer v. United States*, 245 U.S. 559 [38 S.Ct. 209, 62 L.Ed. 469 (1918)] but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though

such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218–19, 93 L.Ed. 168 (1948) (footnotes omitted).

Committed to a jurisprudence which judges an accused citizen by actual evidence of the real events, I reject this trend of trial by propensity. The usage of bad acts evidence in Wyoming, outlined in *Pena v. State*, 780 P.2d 316 (Wyo.1989) (Urbigkit, J., dissenting), is no more relevant to direct proof than is the use in this case of an older sister's recitation of her father's prior inappropriate behavior. See similarly *Brown v. State*, 736 P.2d 1110 (Wyo.1987) (Urbigkit, J., dissenting).

I recognize the foundations of our democratic society are thinly anchored in preservation of constitutional rights and historical values which, once weakened, may not survive attitude and exasperation under the pervasively confining and accelerative existence of these modern times. Compromises for efficiency to deny individual justice can destroy the system before the weakening of the structure is actually observed. I cannot acclimate to either "liberal rules," [3] by which admission of all bad acts extrinsic occurrence evidence is the

---

**2.** See Note, *The Admissibility of Prior Bad Acts in Sexual Assault Cases Under Alaska Rule of Evidence 404(b)—An Emerging Double Standard*, V Alaska L.Rev. 193 (1988).

**3.** The judicial sponsors who now rush to increase the power of the state by pointing out the

"inclusive" characteristics of W.R.E. 404 seem paralyzed by their own logic when the "inclusive" characteristics of such conservative provisions as U.S. Const. amend. IX or Wyo.Const. art. 1, § 36 are pointed out as well.

mode and denial without defining principle is the exception, or our retention of a facade that admission is improper unless justified by exception. The termite-like exceptions will devour the infested structure. Either way, nothing of the historical superstructure remains.

Consequently, it is appropriate to continue, at least for now, to clutch to the explications of criminal law that conviction of an offense should be proved by evidence directly related to the events of the alleged commission as intrinsic occurrence evidence. Adjudication has not yet moved properly to search out "extrinsic activity," *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978), *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), as an avenue of proof which reflects adversely on the character of the defendant regardless of whether that activity might give rise to criminal liability. Due process is circumvented and our right to an impartial jury trial when charged is invalidated. I reaffirm what the dissent a decade ago said in *Beechum,* 582 F.2d at 926–27:

At the heart of the majority's error in this case is its mistaken placement of the spotlight on the Federal Rules of Evidence, instead of where it rightfully belongs—on the criminal trial of a human being. The majority places the vague and uninformed stage hands of the drama—the Federal Rules of Evidence—in the center of the stage, and pushes the principles of a fair criminal trial into weak, whispered supporting roles off to the edge of the proscenium wall.

Additionally, we should understand the basic principle of our law *is stated in the first clause* of W.R.E. 404(a). What follows are *exceptions* to be justified in reason, logic and justice with the exercise of directed discretion for application only when appropriate. "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, * * *." W.R.E. 404(a). Admissibility of bad acts evidence under W.R.E. 404(b) and 609 is perhaps the major procedural inquiry in the massive volume of present criminal appeals.[4] For reasons better restricted to political science and sociology than dissenting opinion review, it is apparent the use of this character of evidence will accelerate with observable social problems. Our historical standards of what evidence is proper for the prosecution to prove its case now seem like soft soil beneath a tidal wave.[5] The problem with the Wyoming Rules of Evidence, which is the same problem infecting the Federal Rules of Evidence—specifically F.R.E. 403 and 404(b)—was recognized almost before they became effective. "Given the wide latitude for judicial discretion in admitting evidence, a reviewing court has little opportunity to question a trial judge's decision to admit such information." Symposium, *The Federal Rules of Evidence,* 71 NW U.L. Rev. 634, 644 (1976).

My particular problem with the majority is not so much the other person sexual assault testimony exception[6] as it is the contended exceptions seem to have mutated to become the rule for all cases, removing any direct deterrents to admissibility of

---

**4.** See citation of other current authorities and scholastic reviews in *Brown,* 736 P.2d 1110 (Urbigkit, J., dissenting).

**5.** Weinstein states the problem as:

Although all American jurisdictions agree that no evidence may be introduced which seeks solely to prove that the accused has a criminal disposition, the question of when evidence of a particular criminal act may be admitted is so perplexing that the cases sometimes seem as numerous "as the sands of the sea," and often cannot be reconciled.

2 Weinstein's Evidence, United States Rules ¶ 404[08] at 404–53 (1989).

On a more limited field of mutation by all-inclusive exception, a recent federal court case recognized:

Because intent is an element of virtually every crime, if evidence of other criminal activity were routinely allowed in simply to prove the intent element of a crime, the intent "exception" would soon swallow the rule. * * * Thus, we have stressed that intent must be a genuinely contested matter in the case and not merely a formal issue.

*Landrum v. United States,* 559 A.2d 1323, 1326 (D.C.App.1989).

**6.** *Cf.* Note, *supra* n. 2, V Alaska L.Rev. 193.

propensity and character evidence in all criminal cases.

With the handwriting on the wall, those jurists dedicated to the proposition that guilt or innocence should be determined by the actual evidence of real facts have begun sounding cries of alarm as the current trend to slipshod prosecution by bad acts allegations.[7] The great care requirement authenticated in recent federal court review is uncontrollably not evidenced here by this liberal Wyoming attitude for other bad acts prosecution evidence. *United States v. Colon,* 880 F.2d 650, 656 (2d Cir.1989); *United States v. Brown,* 880 F.2d 1012 (9th Cir.1989).

Perhaps some basic considerations within W.R.E. 403, 404(b) and 609 will call us back to our ancestral home in law. We first need to understand the nature of the basic charge which is to find a system faithful to our traditional value of conviction of a crime by proof of the elements without infusion of character and propensity prejudice. Perhaps the march away from the historical Anglo–American concept of criminal justice is irreversible, but at least within the body of case law, some relatively direct and understandable concepts could deter total extinguishment. Each of the

suggestions have support in basic case reviews and, as a combination, the totality seems unavailable in present Wyoming process.

In analysis of these cases, the trial tribunal must first decide whether actual W.R.E. 404(b) evidence is presented. The phraseology in *Crozier v. State,* 723 P.2d 42 (Wyo.1986) may have been improvident since that first question is whether the proffered facts relate to the course of conduct or history of the event which serves to develop the natural development of the facts. *Id.* at 49. If the evidence fits within this field of examination, *it is not bad acts evidence. Justice v. State,* 775 P.2d 1002 (Wyo.1989); *Miller v. State,* 755 P.2d 855 (Wyo.1988); *Scadden v. State,* 732 P.2d 1036 (Wyo.1987). Consequently, in a technical sense, course of conduct or history of the occurrence evidence is not an exception to the bad acts, other crimes, wrongs or acts within the character of *extrinsic offense evidence. United States v. Leavitt,* 878 F.2d 1329 (11th Cir.1989). Course of conduct evidence to be applied as *intrinsic offense evidence* involves those events from which the contended offense arises and is to be tested by a much broader arena of court discretion generally defined by the sound discretion of the court.[8] *Ar-*

---

**7.** "If a *murderous propensity* may be proved against a defendant as one of the tokens of his guilt, a rule of criminal evidence ... must first be declared away. Fundamental hitherto has been the rule that character is never an issue in a criminal prosecution unless the defendant chooses to make it one.... *In a very real sense a defendant starts his life afresh when he stands before a jury, a prisoner at the bar.... Inflexibly the law has set its face against the endeavor to fasten guilt upon him by proof of* character or experience *predisposing to an act of crime.... The principle back of the exclusion is one, not of logic, but of policy.... There may be cogency in the argument that a quarrelsome defendant is more likely to start a quarrel than one of a milder type, a man of dangerous mode of life more likely than a shy recluse. The law is not blind to this but equally it is not blind to the peril to the innocent if character is accepted as probative of crime. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a*

*condemnation irrespective of guilt of the present charge.'"*
Payne, *The Law Whose Life is Not Logic: Evidence of Other Crimes in Criminal Cases,* 3 U.Rich.L.Rev. 62, 67–68 (1968) (quoting *People v. Zackowitz,* 254 N.Y. 192, 172 N.E. 466, 468 (1930)) (emphasis in original).

**8.** It is also my persuasion that the rule for determining whether the proffered testimony is bad acts, *extrinsic offense evidence* or immediate circumstance *intrinsic offense evidence* comes within the same general rules for admission of other evidence as a general standard of exercised trial court discretion. It follows that the broad arena of discretion to determine existence of and admission for course of events evidence is less confined in prejudicial analysis, probative criteria and relevance than is the proper application to the W.R.E. 404(b) evidence which is principally related to propensity and character. If there has been any specific analysis of this proper differentiation, it has not come to the attention of this writer in the multitude of cases and hordes of law journal analyses. *See Scadden,* 732 P.2d 1036 and *Crozier,* 723 P.2d 42. *See also Leavitt,* 878 F.2d 1329.

*nold v. Mountain West Farm Bureau Mut. Ins. Co., Inc.*, 707 P.2d 161 (Wyo. 1985); *Matter of MLM*, 682 P.2d 982 (Wyo. 1984); *People v. Melton*, 44 Cal.3d 713, 244 Cal.Rptr. 867, 750 P.2d 741, *cert. denied* —— U.S. ——, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988).

Obvious examples frequently litigated but almost never with success include objections to photographs of the victim, *Munden v. State*, 698 P.2d 621 (Wyo.1985); *State v. Leavitt*, 116 Idaho 285, 775 P.2d 599 (1989), autopsy reports and granting or denying of a request to view the site of the alleged crime. Cases, rules and discretion applicable to the intrinsic evidence course of conduct should not be applied to the much more confined bad acts extrinsic offense evidence of W.R.E. 404(b) and convictions of W.R.E. 609. *Scadden*, 732 P.2d 1036. *See however, Lauthern v. State*, 769 P.2d 350, 357 (Wyo.1989). It should also be noted before we address true W.R.E. 404(b) evidence, such as testimony of another victim, that the testimony of the same victim is not normally exception evidence within W.R.E. 404(b). *King v. State*, 545 So.2d 375 (Fla.App.1989).[9] Testimony of the victim about a continued course of criminal behavior fits comfortably within the non-W.R.E. 404(b) definition to be applied to the evidence. Historically, this is the basis that the victim in sexual assaults was entitled to testify about other events and the general circumstances of the relationship with the accused. It was when the non-W.R.E. 404(b) rules applicable to the same victim were stretched to include other victims and admissibility of their testimony as a true W.R.E. 404(b) evidence exception that present tensions developed which attack the basic principles of conviction by proof of a charged event and not bad character or propensity prejudicial offerings for jury consumption.[10]

Consequently, the trial court is entitled to determine whether the contested evidence is intrinsic: full story—course of conduct. With that determination, no deterrent exists to admissibility except those generally vested in the court relating to introduction of all evidence including relevance, repetitiveness, unduly prejudicial nature or even just a waste of time for presentation and jury review.[11]

The bad acts evidence litigation as the pervasive present dispute of our judiciary today comes forward with the extrinsic offense evidence and it is in this arena where the battleground is located in developing and applying rules of evidence for trial. It is also this present court's "liberal attitude" for introduction of the extrinsic offense evidence to which my numerous dissents have been addressed as founded in a simple determinant that conviction should occur on evidence of the offense charged and not propensity, bad character or unfavorable history.

Once the trial court has made the first exclusion and found extrinsic offense evidence presented, then certain rules and standards should be applied to minimize unnecessary erosion of the endangered notion that guilt should be proved by evidence of the occurrence. Systematically, these should include:

1. The decision on introduction of W.R.E. 404(b) and 609 evidence should be addressed by pretrial submission or motion in limine before trial. C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5224 at 320–21 (1978); 2 Weinstein's Evidence, United States Rules ¶ 404[19] at 404–163 (1989); 3 Weinstein's Evidence, *supra*, ¶ 609[05] at 609–95 (prior convictions). *See Newell v. State*, 548 P.2d 8 (Wyo.1976). *See also State v. Howell*,

---

9. See Wyoming historical precedent in *Lauthern*, 769 P.2d 350; *State v. Koch*, 64 Wyo. 175, 189 P.2d 162 (1948); *State v. Quirk*, 38 Wyo. 462, 268 P. 189 (1928); and *Strand v. State*, 36 Wyo. 78, 252 P. 1030 (1927) to be compared with *Brown*, 736 P.2d 1110 and *Elliott v. State*, 600 P.2d 1044 (Wyo.1979). *See also* Note, *Evidence—The Impotence of Wyoming Rule of Evidence 404 in Sex Crime Trials: Brown v. State*,

736 P.2d 1110 (Wyo.1987), XXIII Land & Water L.Rev. 267, 280 (1988).

10. Note, *supra* n. 2, V Alaska L.Rev. 193.

11. *Banks v. Crowner*, 694 P.2d 101 (Wyo.1985); *City of Evanston v. Whirl Inn, Inc.*, 647 P.2d 1378 (Wyo.1982). *See generally* 2 D. Louisell and C. Mueller, Federal Evidence § 125 (1985).

226 Mont. 148, 734 P.2d 214 (1987), where a notice before trial is required.

2. The court should ask first of the proponent of the evidence in criminal cases: (a) what is the evidence presented, how and by whom;[12] (b) what is the specific contended issue of trial to which it will be addressed;[13] and (c) what will that evidence prove on this contested issue in addition to propensity, character and bad reputation.[14]

3. The opponent should address reasons for objection and assert particular prejudice anticipated at the pretrial session.[15]

4. The decision then to be made by the trial court, after fidelity to the balancing requirement of W.R.E. 403 and 609, is whether the prejudicial effect outweighs the probative value.[16]

5. The trial court should make a finding justifying admissibility or rejection by a specific determination of the contested issue to be addressed and what probative value, if any, is to be provided by the evidence. This is so whether the ruling is made or reserved for a time of attempted presentation at trial when evidence is rejected or a decision to admit is made.[17]

6. An appropriate limiting instruction should be given at the time of introduction to confine the jury consideration of the evidence to the purpose or intent for which admission was permitted in accord with the court's finding.[18] *Howell*, 734 P.2d 214;

12. *Howell*, 734 P.2d 214; 2 Weinstein's Evidence, *supra*, ¶ 404[19] at 404–163.

13. *United States v. Robinson*, 700 F.2d 205 (5th Cir.1983); *State v. Stevens*, 115 N.J. 289, 558 A.2d 833 (1989); *State v. Niemeyer*, 195 N.J.Super. 559, 480 A.2d 963 (1984).

14. *United States v. Phillips*, 599 F.2d 134 (6th Cir.1979); *Beechum*, 582 F.2d 898; Reed, *supra*, 50 U.Cin.L.Rev. 713.

15. *Goodman v. State*, 601 P.2d 178 (Wyo.1979).

16. C. Wright & K. Graham, *supra*, § 5215 at 273–74 (footnotes omitted) states:

Once probative value has been determined, the court must look to the six countervailing factors listed in Rule 403. These are grouped into three "dangers"—unfair prejudice, confusion of issues, misleading the jury—and three "considerations"—undue delay, waste of time, and needless presentation of cumulative evidence. In the original scheme, exclusion was mandatory when probative value was outweighed by one or more of the "dangers," but only discretionary when "considerations" were involved. Although the original distinction has been abolished, "dangers" will still be weightier than "considerations" when the balance is struck because the three "dangers" all threaten the validity of factfinding, whereas the "considerations" only effect the efficiency of the courts.

"Unfair prejudice" will probably become the most significant of the three "dangers." Attorneys are more alert to this factor and invoke it more often. Since the categories of prejudice, confusion, and misleading the jury tend to overlap, courts often discuss all three in terms of prejudice. In extreme cases, the use of unfair prejudice against a criminal defendant can deny him a fair trial in violation of the right to due process.

*See also* C. Wright & K. Graham, *supra*, § 5214 at 263; 2 Weinstein's Evidence, *supra*, ¶ 404[18] at 404–141; Lewis, *Proof and Prejudice: A Constitutional Challenge to the Treatment of Prejudicial Evidence in Federal Criminal Cases*, 64 Wash.L.Rev. 289 (1989).

The two stage analysis is engrossed by Judge Selya in *United States v. Rodriguez–Estrada*, 877 F.2d 153, 155 (1st Cir.1989) (footnotes omitted):

Determining the admissibility of evidence of other (uncharged) bad acts requires a bifurcated inquiry. First, the district court must be satisfied that the proffered material has "special" probative value, that is, that the evidence is relevant not to show a defendant's propensity toward evil, but to prove some controverted issue in the case. * * *

Once shown to be relevant in the requisite sense, the evidence must pass still another sentry, embodied in Fed.R.Evid. 403. If the evidence brings unwanted baggage, say, unfair prejudice or a cognizable risk of confusing the jury, and if the baggage's weight substantially overbalances any probative value, then the evidence must be excluded.

17. *Stevens*, 558 A.2d at 833; C. Wright & K. Graham, *supra*, § 5224 at 321; Weinstein and Berger, *Basic Rules of Evidence in the Proposed Federal Rules of Evidence*, 4 Ga.L.Rev. 43, 86 (1969). *Cf. United States v. Dolliole*, 597 F.2d 102 (7th Cir.), *cert. denied* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979).

18. However, trial error may not result unless counsel requests that a limiting instruction, appropriate to the circumstances, be given. *United States v. Sangrey*, 586 F.2d 1312 (9th Cir. 1978); *United States v. Cooper*, 577 F.2d 1079 (6th Cir.), *cert. denied* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978).

*Com. v. Billa,* 555 A.2d 835 (Pa.1989). *See also Llach v. United States,* 739 F.2d 1322 (8th Cir.1984); *United States v. McClain,* 440 F.2d 241 (D.C.Cir.1971); and *State v. Stevens,* 115 N.J. 289, 558 A.2d 833, 841 (1989). *Cf. United States v. Jimenez,* 613 F.2d 1373 (5th Cir.1980), where that court said even the most careful of instructions, however, would not have sufficiently limited the prejudicial nature of the extrinsic offense evidence.

The effect of these procedural safeguards are both to ameliorate unnecessary prejudice in the search for truth and also to define carefully what is to be accomplished during that search. Justice Blume warned us years ago of the dangers in allowing evidence of other crimes in *Rosencrance v. State,* 33 Wyo. 360, 366, 239 P. 952 (1925) (quoting *Commonwealth v. Shepard,* 1 Allen (Mass.) 575 and *Towne v. People,* 89 Ill.App. 258):

> "It is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him and for which he is on trial, but also because it may lead the jury to violate the great principle that a party is not to be convicted of one crime by proof that he is guilty of another."

> \* \* \* \* \* \*

> "But the general rule is salutary and a departure from it is perilous, and hence courts are reluctant to extend the exception to the rule beyond well established lines."

I do not fall into the justification by necessity and adaptation that admissibility is determined by the relative weakness of the prosecution's case. If the evidence of guilt is overwhelming, the intrinsic offense evidence is either redundant, repetitive or harmless error. The real issue of bad acts evidence in criminal case prosecution is where the result is questionable unless the particularized effect can be secured by the use of intrinsically prejudicial material as persuasively and factually related to the character, reputation or propensity of the charged defendant. It is in this circumstance that the method of securing a criminal conviction is most frequently pressed and more often abused.

There is another fundamental concern which attaches to our current trend of pretending to use bad acts evidence for something beyond pure propensity evidence. The author in Comment, *Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses,* 25 UCLA L.Rev. 261, 274 (1977), as an authority cited by the majority, accurately observes:

> Given the objective of fairness to the defendant, it would be incongruous if a defendant were forced to choose between not testifying and appearing guilty, and testifying and subjecting himself to certain prejudice.

My sense of disquiet with our mutation into an inquisitorial judicial system for criminal trials comes not only from the realization that the defendant is deterred from personally presenting his testimony to the jury, but that the defense is deterred from effective cross-examination and use of other witnesses in order to avoid "opening the door." If innocence is maintained or any defense is made, credibility of the complainants is arguably presented and bad acts evidence is available to attack "credibility" of the defense or support credibility of the prosecution. Defendant's counsel then faces not only the inquiry for truth as a perceived criteria of the trial environment, but assessing prejudicial bad acts evidence and what will happen if he makes any effort to effectively mount a defense in representation of his client.[19] There is a world of difference in moral justification between use of bad acts evidence to discredit a witness from usage to underpin the credibility of the complainant by attacking defendant or his witnesses.

In urging a revision of F.R.E. 403, Professor Craig Lewis in *Proof and Prejudice: A Constitutional Challenge to the Treatment of Prejudicial Evidence in Federal Criminal Cases,* 64 Wash.L.Rev. 289, 362–63 (1989) contends:

> Federal Rule of Evidence 403 fails to account for constitutionally protected in-

---

**19.** Ladd, *Credibility Tests—Current Trends,* 89 U.Pa.L.Rev. 166, 191 (1940).

terests of defendants in criminal trials. In its present form it invites decisions on the admissibility of potentially prejudicial evidence that jeopardize the trustworthiness of determinations of guilt. Appellate review offers little more than a placebo for the risks of error created by the rule.

The problem with Rule 403 is fundamental: the rule and its current jurisprudence conflict with the presumption of innocence and the most basic precepts of criminal justice in an accusatorial system. The cure must come from a revision of the rule that will reorder trial and appellate court priorities to account for the individual and societal interest in reasonable certainty about the accuracy of convictions.

A call for that cure undoubtedly will find disfavor in an era of judicial sensitivity to a publicly perceived overindulgence of those charged with crime. Nonetheless, the concept of criminal justice reflected in the reasonable doubt standard and the constitutional doctrine established by *Winship* demand a revision of Rule 403 to reallocate the risks of factfinder error in criminal cases. The revision proposed in this Article would shift to the prosecution the burden of justifying the creation of a potential for unfair prejudice and the incentive to offer the least prejudicial proof on an issue. It also would heighten judicial awareness of the fundamental interests placed at risk by the use of prejudicial evidence in criminal cases and would place the greater share of the risks of factfinding error on the prosecution, where it belongs.

The price of the revision would be—indeed, would be calculated to be—the acquittal of some persons who would have been convicted under the present Rule 403. Some portion of this increase in acquittals will include defendants who in fact are guilty of the crimes with which they were charged. But a significant portion of these additional acquittals will be of defendants who are in fact innocent but who would have been convicted under the present rule because of its error-inducing structure. If our professed interest in reasonable certainty about the guilt of persons convicted of crimes is genuine, we should readily pay the price of the revision.

We should look to what Wigmore once recognized, but since the immersion in present "liberal rules" is now seldom acknowledged:

Most courts recognize that the allowance of a course of examination into particular misconduct places in the hands of cross-examining counsel an instrument which he may use not wisely but too well. * * *

The *first* reason, to be sure, is purely one of sentiment. The ordinary instincts of decency, not to say courtesy, are violated by such examinations, and every new instance makes us more sodden to the spectacle and tends to bring us towards the same level of degradation. It is the difference between the hunt and the slaughterhouse. One may well enough find sport in stalking the lion in the desert or beating the bush for the tiger, because there is a risk for the hunter which dignifies his sport, and there is a rapacity and destructiveness in the hunted which leaves no room for sympathy; but the process of cutting the throat or knocking the head of a sheep or an ox penned in the shambles is both safe and brutal, and is to be justified only on the ground of its absolute necessity. The hunting down of a fleeing desperado, or the ensnaring of a chief of counterfeiters by the craft of detectives, is a process which does not violate instincts of fairness or principles of justice. But the ruthless flaying of personal character in the witness box is not only cowardly—because there is no escape for the victim—and brutal—because it inflicts the pain of public exposure of misdeeds to idle bystanders—but it has often not the slightest justification of necessity. Severe limits must be put to such conduct. As Lord Ellenborough said, "I will put it to your own feelings, your own good sense." Some weight must be allowed to the instincts of manly fairness and good sense.

The second reason is a politic one, i.e., that, with the prospect of such an exami-

nation as a possibility, the public is certain to dread the witness box. From time to time those whose knowledge would have been valuable will seek to evade disclosing it; the ascertainment of the truth will be hampered and perhaps prevented. That such a feeling exists today, in a greater or less degree, can hardly be doubted.

3A Wigmore, Evidence § 983 at 841 (1970) (emphasis in original and footnote omitted).[20]

The majority, although first recognizing the accused always maintained his innocence, reveals latent inquisitorial tendencies with but a few sentences:

> Although not testifying himself [within the defense that he was innocent of the crime charged], Gezzi attacked G.G.'s credibility through the introduction, in defense to the charge, of the testimony of Mrs. Gezzi and a social worker that G.G. had a tendency to lie. Moreover, the physical evidence admitted at trial was inconclusive as to the cause of G.G.'s physical symptoms. P.G.'s testimony relating a course of sexual misconduct occurring between herself and Gezzi was sufficiently similar to the events of molestation occurring between Gezzi and G.G. to be particularly relevant under Rule 404(b) for the purpose of corroborating G.G.'s testimony.

Again, I claim Gezzi should have been charged with incest with his older daughter if her testimony to that effect was allowed in open court when he was being tried for such acts with his younger daughter—then he would have been afforded a realistic opportunity to defend himself through effective counsel. I cannot justify the admissibility of the extrinsic offense evidence in this case within the procedure followed or on the substantive basis of availability whenever our common constitutional right to defend might be undertaken by anyone criminally accused. I dissent.

MACY, Justice, specially concurring.

I concur solely because this case is in accord with *Brown v. State,* 736 P.2d 1110 (Wyo.1987), and *Elliott v. State,* 600 P.2d 1044 (Wyo.1979). I still contend, however, that we are laboring over a rule of evidence which has been emasculated by judicial exceptions.

---

**20.** It has been the principal attention of the courts to consider bad acts evidence in reference to the criminally accused and perhaps his witnesses. *State v. Shaw,* 775 P.2d 207 (Mont. 1989). It should, however, be recognized that impeachment and credibility destruction of witnesses is not logically confined to defendants in criminal cases. Complainants and other witnesses for the prosecution and all participants in civil cases can, in time, be similarly subjected to a regurgitation of their history to create and influence the jury by credibility destruction. This general trend is directly contrary to rape shield statutes and evidentiary principles which seek to deny defensive tactics to destroy the believability and worth of the complainant. Murder or rape is no less a crime when committed upon a person who might be a prostitute than is the question when perpetrated upon someone of unimpeachable virtue. See civil trial application of conviction without balancing in *Green v. Bock Laundry Mach. Co.,* — U.S. —, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). However, do not expect fairness in any consistency for equal rights for the defendant. See *Carey v. State,* 715 P.2d 244 (Wyo.), *cert. denied* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986) which creates a post-crime rape victim shield. See also Note, *Evidence—Diggs v. Lyons: The Use of Prior Criminal Convictions to Impeach Credibility in Civil Actions Under Rule 609(a),* 60 Tul.L.Rev. 863 (1986); and Note, *Impeachment With Prior Convictions Under Federal Rule of Evidence 609(a)(i): A Plea for Balance,* 63 Wash.U.L.Q. 469 (1985).